**In the Matter of M.W. and D.D. Children in Need of Services.**

**Lorraine Davis, Appellant–Respondent,**

v.

**Marion County Department of Child Services, Appellee–Petitioner,**

and

**Child Advocates, Inc., Co–Appellee (Guardian Ad Litem).**

No. 49A02–0612–JV–1146.

Court of Appeals of Indiana.

July 20, 2007.

Victoria L. Bailey, Fort Wayne, IN, Attorney for Appellant.

Megan McCain, Indianapolis, IN, Attorney for Marion County Department of Child Services.

## OPINION

BAKER, Chief Judge.

Appellant-respondent Lorraine Davis appeals from the trial court's determination that her minor sons, M.W. and D.D., were Children in Need of Services (CHINS). Specifically, Davis claims that the evidence was insufficient to support the Marion County Department of Child

Services' (MCDCS) allegations that she had an alcohol abuse problem and that she had physically abused her sons. Concluding that the evidence was insufficient to support the CHINS determination, we reverse the judgment of the trial court.

## FACTS

Davis is the mother of M.W., born May 1, 1990, and D.D., born March 14, 1993. According to ChaMia Gunn, an investigator with the MCDCS, Davis initially became involved with the agency in February 2006 when the MCDCS received a report[1] that Davis was intoxicated and had banged M.W.'s head on a floor. Gunn also indicated that this report alleged that Davis jumped on D.D. when he attempted to stop the altercation. Thereafter, Gunn interviewed Davis at the juvenile center and observed some bruising on Davis's arm and leg. Davis told Gunn that D.D. had inflicted the injuries and Davis later testified that D.D. had accidentally pushed her down some steps.

Gunn testified that the MCDCS received a second report later that month, alleging that Davis had again become intoxicated and attacked her children. Gunn testified that another report in March indicated that the Davis's home had no electricity or gas and that the children had not been enrolled in school.

Gunn also testified that the MCDCS received a report in June 2006, indicating that D.D. was living in a foster home after the juvenile court ordered D.D.'s removal from Davis's custody. Gunn testified that D.D. was no longer living with Davis because of the recurring alcohol abuse problems. Gunn further maintained that Davis had either been evicted from her apart-

---

1. Neither this report nor any others relating to Gunn's testimony about Davis were admitted into evidence. Moreover, there was no testimony as to who generated the reports or who made the allegations against Davis.

ment or moved and was living with her brother. When Gunn visited Davis's residence, she observed that the refrigerator was not working and that there was very little furniture in the residence. As a result of her investigation, Gunn concluded that Davis had an alcohol abuse problem and lacked appropriate housing to care for her children.

Thereafter, the MCDCS filed a CHINS petition on June 16, 2006, alleging that:

On or about June 16, 2006, the Department of Child Services ... determined, by its Family Casemanager ... ChaMia Gunn, these children to be children in need of services because their mother and sole legal custodian, Lorraine Davis, has failed to provide her children with a safe and stable home environment, free of abuse and neglect. Ms. Davis has a significant history with DCS and alcohol abuse. The children have also disclosed allegations of alcohol abuse. MCDCS has extensive history with the family and has previously attempted to offer services designed to ensure the health, safety, and welfare of the children. At this time, however, the children are endangered in the care of Ms. Davis and the family is in need of rehabilitative services.

Appellant's App. p. 21.

At a pretrial conference that was conducted on August 16, 2006, the trial court ordered both children to be placed back into Davis's custody for temporary in-home visitation. On October 12, 2006, the trial court granted the MCDCS's motion to terminate the children's in-home visitation because of Davis's alleged alcohol abuse, and both D.D. and M.W. were again removed from Davis's care. However, a substance abuse screen revealed a negative test for five classes of drugs. Additionally, an alcohol screening assessment demonstrated that Davis did not have an alcohol problem.

Gunn testified at the fact-finding hearing on November 14, 2006, about the reports that the MCDCS had received regarding Davis's alcohol abuse and physical abuse of her children. Gunn stated that she had reviewed police reports and interviewed Davis and her sons. However, Gunn admitted that she had no personal knowledge of the allegations.

D.D. testified that he was the individual who had alleged that Davis had been drunk and banged M.W.'s head against the floor. He testified that those allegations were not true and that he had lied because Davis prohibited him from leaving the house after he had caused some problems at school. D.D. also stated that Davis did not have an alcohol problem and, despite her strictness, was a good mother.

Davis denied the allegations of alcohol abuse and physical abuse against her sons. She also testified that she had vacated her apartment because the owners refused to fix problems that she had been experiencing with the plumbing. As a result, Davis maintained that she moved to a different residence the same day she had left the previous apartment.

Davis also testified that although D.D. had been arrested for battery regarding the incident involving the stairs, the injuries were accidental. M.W. also testified that Davis did not have a drinking problem and that she had never hit his head against the floor. He also testified that Davis and D.D. did not get into fights.

At the conclusion of the hearing, the trial court determined that M.W. and D.D. were CHINS. The court stated, "I think that more services are needed and need to take place. I am not entirely sure what they are. Ms. Davis, basically I didn't believe either of your testimony [sic]. I

just didn't believe it. I don't know to the extent of what you are lying about but I just flat out didn't believe it." Tr. p. 48–49. Davis now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

Indiana Code section 31–34–1–1 provides that a child under eighteen years old is a CHINS if:

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and;

(2) the child needs care, treatment or rehabilitation the child:

   (A) is not receiving; and

   (B) is unlikely to be provided or accepted without the coercive intervention of the court.

The MCDCS bore the burden of proving by a preponderance of the evidence that Davis's children were CHINS. I.C. § 31–34–12–3. When reviewing the sufficiency of the evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. *Perrine v. Marion County Office of Child Servs.*, 866 N.E.2d 269, 273 (Ind.Ct. App.2007). We will not reweigh the evidence or judge the credibility of witnesses. *Id.* Moreover,

> [d]etermining whether the evidence is sufficient requires both a quantitative and qualitative analysis.... Quantitatively, evidence may fail only if it is absent, that is only where there is none at all. Qualitatively, however, it fails when it cannot be said reasonably that the intended inference may logically be drawn therefrom. The failure of infer-

ence may occur as a matter of law when the intended inference can rest on no more than speculation or conjecture.

*Carbo, Inc. v. Lowe*, 521 N.E.2d 977, 980 (Ind.Ct.App.1988).

### II. Davis's Claims

In essence, Davis argues that the CHINS judgment must be vacated because the MCDCS failed to prove its case. Indeed, she asserts that "taking only the evidence and reasonable inferences most favorable to the trial court's judgment on the allegations made in the ... petition, the evidence was insufficient both qualitatively and quantitatively, to support the trial court's finding that Davis's sons were CHINS." Appellant's Br. p. 5. Davis's claims are well taken.

As Davis points out, the CHINS petition was based, in relevant part, on the various reports that Gunn had reviewed. Indeed, Gunn—one of two witnesses called by the MCDCS—testified at the fact-finding hearing that her investigation consisted of "look[ing] over prior police reports" and interviewing Davis and her children. Tr. p. 33, 36. Gunn never observed Davis drink, much less abuse, alcohol. *Id.* at 36. As noted above, Davis flatly denied abusing alcohol or harming her children. *Id.* at 34.

After Gunn visited Davis at her brother's home, Gunn concluded that Davis "really didn't have a place at that time." *Id.* at 35. However, the uncontradicted evidence established that the only reason Davis moved from her apartment was because there were plumbing problems and the housing complex refused to make repairs. *Id.* at 41. Thus, Davis believed that "the house wasn't sanitary for [the] kids." *Id.* Davis testified that she "always had housing," and the undisputed evidence established that Davis had been living at the same residence in Indianapolis for

three months prior to the fact-finding hearing. *Id.* at 47. Davis also testified that she had been working at Christ Missionary Baptist Church in Indianapolis. *Id.*

D.D. testified that his mother had no alcohol problems. *Id.* at 37–39. Although the MCDCS called D.D. to testify against Davis, he stated that he had "made up" the allegation regarding Davis's intoxication as well as the allegation that Davis had banged M.W.'s head against the floor. *Id.* at 37. As noted above, D.D. explained that he lied about those allegations because he was angry and Davis had prevented him from leaving the house after he had caused trouble at school. *Id.* at 38. D.D. testified that there was only one instance involving the police, and it had occurred when he had been arrested for allegedly hitting Davis. *Id.* at 39. However, Davis testified D.D. had accidentally pushed her down the stairs. *Id.* at 40. D.D. also acknowledged that Davis was a "good mother," except for being too strict. *Id.* Finally, M.W. testified that Davis did not have an alcohol problem and denied that she had ever banged his head against the floor. *Id.* at 44–45.

After reviewing the record, it is apparent to us that the MCDCS failed to present any competent evidence in support of its allegation that Davis had an alcohol problem. Indeed, no witness testified to ever having seen Davis under the influence of alcohol, and the MCDCS provided no physical evidence of Davis's alcohol use or abuse. Gunn merely testified about the allegations that she had read from the reports, which were not entered into evidence. That said, even if the trial court did not believe any of the witnesses who testified that Davis did not abuse alcohol, Davis had no burden to disprove those allegations. As a result, we can only conclude that the MCDCS failed to prove that the children suffered neglect or abuse following the allegation that Davis had an alcohol problem. *See Perrine,* 866 N.E.2d at 277 (holding that a single admitted use of methamphetamine outside the presence of the child, without more, is insufficient to support a CHINS determination).

Additionally, we note that the MCDCS failed to present any evidence that Davis had physically abused the children. Again, while the MCDCS lodged allegations of such abuse, no witness testified to ever having seen any abuse occur or to having seen any physical evidence of abuse. And it was not Davis's burden to disprove the MCDCS's allegation that she had abused the children.

In sum, despite the trial court's determination that neither Davis nor her sons were credible, the MCDCS nonetheless failed to prove its case because the record is devoid of any credible evidence that Davis had physically harmed her sons or that she abused alcohol as set forth in the CHINS petition. Thus, we must conclude that the trial court erred in determining that M.W. and D.D. were CHINS.[2]

The judgment of the trial court is reversed.

CRONE, J., concurs.

FRIEDLANDER, J., dissents with opinion.

FRIEDLANDER, Judge, dissenting.

I respectfully dissent from the Majority's determination that the evidence was

---

2. Notwithstanding the result reached in this case, we note that the MCDCS is not foreclosed from pursuing further CHINS proceedings if it obtains additional evidence that would satisfy the requirements of Indiana Code section 31–34–1–1 and proves its allegations at trial.

inadequate to prove M.W. and D.D. were CHINS.

We all agree that the CHINS adjudications were based upon the trial court's determination that Davis has an alcohol problem and that she physically abused her sons. Davis argues, and the Majority agrees, that the MCDCS presented no evidence to substantiate its allegations against Davis. As the Majority puts it, "the record is devoid of any credible evidence that Davis had physically harmed her sons or that she abused alcohol as set forth in the CHINS petition." *Op.* at 1271. I will briefly explain why I conclude otherwise.

First, in its evaluation of the evidence, the Majority notes that (1) Gunn did not actually see Davis abuse alcohol, (2) Davis "flatly denied" abusing alcohol or her children, *op.* at 1270, and (3) D.D. and M.W. denied their mother abused them or alcohol. Of course, this is not proof that Davis had an alcohol problem, but neither is it proof that she did not. For purposes of this review, it is neither surprising nor relevant that Davis and her children denied that she has an alcohol problem or that she had abused them. In fact, Davis's, M.W.'s and D.D.'s accounts should not be considered here because (a) our standard of review constrains us to focus only on the evidence supporting the judgment, *see Perrine v. Marion County Office of Child Servs.*, 866 N.E.2d 269 (Ind.Ct. App.2007), and, more importantly, (b) the trial court expressly found them to be incredible. *See In re A.H.*, 751 N.E.2d 690, 695 (Ind.Ct.App.2001) ("[w]e neither reweigh the evidence *nor reassess the credibility of the witnesses*") (emphasis supplied), *trans. denied.* The evidence upon which this review must focus is the testimony of the MCDCS investigator assigned to this case, Cha Mia Gunn.

Gunn testified about the history of MCDCS and law enforcement involvement with Davis's household. The MCDCS had received four separate reports about the household, three of them concerning Davis's use and abuse of alcohol. The first of those reports involved a physical altercation between Davis and her sons, which allegedly occurred while she was intoxicated. Gunn investigated the report shortly after the incident and found corroborative evidence, i.e., bruises on Davis, which Davis stated were inflicted by D.D., who was charged with battery in connection with the episode. Gunn also testified that D.D. and M.W. had been removed from Davis's custody at some point in the relevant time period and that D.D. had been placed in foster care by the juvenile court in relation to a delinquency matter. At the time, Davis was living with her brother in a home clearly inadequate to raise her sons, as the dwelling was sparsely furnished and without a functioning refrigerator. Davis acknowledged to Gunn that she did not then have a home of her own, but claimed that she was working toward attaining one. Finally, the children were at some point temporarily removed from Davis's care because of her failure to participate in court-ordered services.

Mindful that the resolution of a civil juvenile proceeding such as a CHINS action focuses on the best interests of the child, not on guilt or innocence as in a criminal proceeding, *see In re D.H.*, 859 N.E.2d 737 (Ind.Ct.App.2007), I believe the foregoing is sufficient to carry the State's burden. That is, I believe the MCDCS proved by a preponderance of the evidence that M.W.'s and D.D's physical or mental condition are seriously endangered as a result of Davis's alcohol abuse and her inability, refusal, or neglect to supply them with necessary shelter and supervision, and that Davis is unlikely to supply such without the coercive intervention of the

court. *See* Ind.Code Ann. § 31–34–1–1 (West, PREMISE through 2006 Second Regular Session). I would affirm the trial court.