**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF:  B.G., A CHILD IN NEED OF SERVICES, <br><br> B.T., <br><br>     Appellant-Respondent, <br><br>         vs. <br><br> INDIANA DEPARTMENT OF CHILD SERVICES, <br><br>     Appellee-Petitioner. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    No. 49A02-1208-JC-642<br>)<br>)<br>)<br>)<br>) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Cause No. 49D09-1204-JC-13318

**March 6, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

B.T. ("Mother") appeals the trial court's adjudication of her child B.G. as a child in need of services ("CHINS"). Mother presents a single issue for our review, namely, whether the Marion County Department of Child Services ("DCS") presented sufficient evidence to support the CHINS adjudication.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Mother gave birth to B.G. on July 29, 2011. After B.G.'s meconium tested positive for marijuana, DCS filed an Informal Adjustment ("IA"). Pursuant to the IA, Mother was required to undergo a psychological examination and individual and group therapy. Mother entered an inpatient psychiatric program in March 2012, but that treatment proved unsuccessful. DCS ultimately closed the IA on March 29, due to Mother's unstable housing and lack of cooperation with services.

On March 30, Jessica Monce, a DCS case manager, received a report that Mother had been admitted to the psychiatric unit at Methodist Hospital in Indianapolis twice in one week, and the medical staff was concerned about Mother's ability to care for B.G. The medical staff reported that Mother was not taking prescribed medication for her paranoia and psychosis. The medical staff also reported that Mother was requesting that DCS remove B.G. from her care.

Accordingly, on April 2, DCS filed a petition alleging that B.G. was a CHINS. The petition alleged in relevant part as follows:

> On or about March 30, 2012, [DCS], by its Family Case Manager (FCM), Jessi Monce, determined this child to be a child in need of services because

2

her parents have been unable to provide the child with a safe and appropriate home environment and supervision. The mother and primary care giver of [B.G.], [Mother], has untreated mental health issues. [Mother] was at the hospital related to medical and mental health issues and was providing contradictory statements to hospital staff about her ability to care for the child. [Mother] was displaying concerning behavior towards the child and hospital staff, and left the hospital against medical advice. [Mother] is currently not taking medications prescribed for her mental health diagnoses. [Mother] has been living in a shelter for the last few days, and it is unclear if she has a long-term plan for housing. [Mother] has a history with DCS, including an Informal Adjustment, which was closed on March [29], 2012 unsuccessfully due to lack of participation in services. The alleged father of [B.G.], [V.G.] has not established paternity for his child and is unable to provide for the safety and stability of [B.G.] while she is in [Mother's] care. For all of these reasons, coercive intervention of the Court is necessary and this child is a child in need of services.

Appellant's App. at 28. Following an initial hearing, the trial court placed B.G. with Father and ordered that Mother would have supervised visitation. The trial court ordered that a factfinding hearing on the CHINS petition would be on June 27. On June 26, Mother took B.G. from Father's custody without permission. Police found Mother and removed B.G. from her care.

Following the factfinding hearing on the CHINS petition, the trial court adjudicated B.G. to be a CHINS. Mother now appeals.

**DISCUSSION AND DECISION**

Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if before the child becomes eighteen (18) years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B)

3

is unlikely to be provided or accepted without the coercive intervention of the court. The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; In re M.W., 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. Id. This court will not reweigh evidence or judge witnesses' credibility. Id.

Here, Mother contends that the evidence is insufficient to support the adjudication because the evidence shows that she supplies B.G. with food, clothing, shelter, medical care, and supervision. Mother also maintains that there is no evidence that B.G. needs care, treatment, or rehabilitation that B.G. is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. Finally, Mother points out that B.G. is in "good physical health," "seems to function in an age appropriate manner," and is "developmentally on target." Brief of Appellant at 10.

But Mother's contentions amount to a request that we reweigh the evidence, which we will not do. DCS presented evidence that Mother: has not complied with prescribed medical treatment for her mental health issues; has not maintained stable housing; and took B.G. from Father's care without permission and in violation of the court order that she have only supervised visitation with B.G. Finally, Erma Watson, another DCS family case manager, testified that she has repeatedly explained to Mother what she needs to do in order to get B.G. back in her care, but Mother has not demonstrated any understanding of the process or willingness to participate in the required services.

4

Watson testified that Mother "appear[s] confused" and will ask Watson the same questions repeatedly.  Transcript at 40.  Finally, Watson stated,

> I do think that [Mother's mental health issues are] an endangerment to the child, [and] I don't know that she would be able to appropriately care for this child if she is not understanding my simple instructions or explanations.  I mean is she going to know to do certain things for the child?  There is concern about her anger and her outrage.

Id. at 44.

We hold that DCS presented sufficient evidence to show that, due to Mother's mental health issues, failure to maintain stable housing, and failure to cooperate with DCS, B.G.'s physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of Mother to supply B.G. with necessary shelter and supervision; and that B.G. needs care that she is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court.

Affirmed.

FRIEDLANDER, J., and BRADFORD, J., concur.