**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**AMY KAROZOS**
Greenwood, Indiana

ATTORNEYS FOR APPELLEE:

**ROBERT J. HENKE**
Indiana Department of Child Services
Indianapolis, Indiana

**PATRICK M. RHODES**
Indiana Department of Child Services
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF D.S., CHILD IN NEED OF SERVICES, ) ) ) | |
| R.J., ) ) | |
| Appellant-Respondent, ) ) | |
| vs. ) ) | No. 49A02-1301-JC-26 |
| INDIANA DEPARTMENT OF CHILD SERVICES, ) ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Danielle Gaughan, Magistrate
Cause No. 49D09-1209-JC-35418

**August 22, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

R.J. ("Father") appeals the juvenile court's adjudication of his child, D.S., as a child in need of services ("CHINS").[1] Father presents a single issue for our review, namely, whether the court's adjudication of D.S. as a CHINS is clearly erroneous. We affirm.

**FACTS AND PROCEDURAL HISTORY**

On July 24, 2012, Officer Jonathon Schultz of the Indianapolis Metropolitan Police Department ("IMPD") responded to a report of domestic violence at a residence in the 2800 block of North Denny Street. When he arrived on the scene, he observed D.S.'s mother, A.S. ("Mother"), with bruising on her face, a bloody mouth, and several missing teeth. Officer Schultz further observed blood around the kitchen table and chair. Mother told Officer Schultz that Father, her ex-boyfriend, had attacked her and that, following the attack, she had lost consciousness.

When Officer Schultz approached Father, he denied attacking Mother. Officer Schultz noticed that Father smelled of alcohol and had bloodshot eyes. Officer Schultz informed Father that he was under arrest, and Father responded by becoming "verbally combative . . . , using racial slurs and making threats." Transcript at 19.

Thereafter, Mother recanted the statements she had made to Officer Schultz, insisting instead that she had intervened in a fight between Father and Mother's mother and she was unsure who had struck her. Mother also insisted that she was drunk at the

---

[1] Mother A.S. does not participate in this appeal.

2

time and could not remember what had happened.  As such, the State did not pursue criminal charges against Father.

Nonetheless, the Department of Child Services ("DCS") investigated the report of domestic violence.  Family case manager Derek O'Brien ("FCM O'Brien") interviewed Mother, who had moved in with Father, and she informed him that, at the time of the July 24 incident, D.S. "was in the home."  Id. at 33.  FCM O'Brien was concerned that Mother's revised explanation of the incident "minimized the domestic violence," which concerned him because, "[w]hen a parent minimizes domestic violence[,] they [sic] tend to stay with the offending parent more often . . . and that creates a situation where they [sic] keep the children in that same environment allowing them to witness domestic violence."  Id.

On September 10, the DCS filed its petition alleging D.S. to be a CHINS.  In particular, the petition alleged that Mother and Father

> have failed to provide the child with a safe and appropriate living environment free from domestic violence.  [Mother and Father] have an extensive history of domestic violence, and they were recently involved in a physical altercation in the child's presence.  The family previously came to the attention of the DCS for a prior incident of domestic violence [in 2008], and services were offered to the parents through an Informal Adjustment Agreement (IA).  Despite previous services offered, the parents continue to demonstrate an inability to provide the child with a safe, appropriate home.

Appellant's App. at 20.

Following the filing of the CHINS petition, the DCS offered Father numerous support services.  However, he refused all services.  Among other rationales, Father stated that he did not need domestic violence classes.  Father also did not avail himself of scheduled visits with D.S.

3

Following an evidentiary hearing, on October 30, 2012, the court entered its order in which it adjudicated D.S. as a CHINS. After describing the above-stated facts, the court found as follows:

- By his own admission, [Father's] criminal history consists of incidents where [Mother] called the police on him alleging domestic violence.

- The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of the child's parent[s] to supply the child with a safe and appropriate home environment free from domestic violence and substance abuse. A domestic dispute occurred on July [24], 2012[,] that necessitated police involvement. At that time [Mother] told police that [Father] had struck her. She later recanted and stated that she was intoxicated and did not recall what happened; she just knew somebody hit her. Clearly, the method of conflict resolution in the home was inappropriate and involved both [Father] and [Mother]. . . .

- The family and the child need care or treatment that they are not likely to be provided without the coercive intervention of the court. Both parents could benefit from services that would address the domestic violence in their relationship . . . .

Id. at 57. The court subsequently entered a disposition order instructing Father, among other things, to participate in DCS-recommended services. This appeal ensued.

**DISCUSSION AND DECISION**

Father appeals the juvenile court's adjudication of D.S. as a CHINS. Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or

4

rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court. The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; Davis v. Marion Cnty. Dep't of Child Servs. (In re M.W.), 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. In re M.W., 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. Id.

Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); Menard, Inc. v. Dage–MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. Menard, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. Menard, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

On appeal, Father asserts that the DCS did not prove that the child's physical or mental condition was seriously endangered. In support of this contention, Father maintains that D.S. was not present during the altercation on July 24, that Mother and Father were no longer in a relationship, and that there was no evidence that D.S. was in need of care or treatment that he was not otherwise receiving. But each of Father's allegations amounts to a request for this court to reweigh the evidence, which we will not do.

The facts presented to and relied on by the juvenile court support the court's adjudication of D.S. as a CHINS. Specifically, based on the DCS' evidence, the court found that: Mother had informed Officer Schultz that Father had attacked her and caused her injuries; Officer Schultz had observed blood around the kitchen table and chair; Father was intoxicated and verbally abusive when confronted by Officer Schultz; D.S. was in the home at the time of the July 24 incident; Mother had later recanted her explanation of the incident; and Mother and Father were living together at the time the family case manager interviewed her. The DCS also demonstrated that Mother and Father had minimized their history of domestic violence and that parents who minimize their domestic violence increase the risk of having a child observe domestic violence. These facts thoroughly demonstrate, as the juvenile court found, that "[t]he child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of the child's parent[s] to supply the child with a safe and appropriate home environment," and that "[t]he family and the child need care or

6

treatment that they are not likely to be provided without the coercive intervention of the court." Appellant's App. at 57. Thus, we affirm the court's adjudication.

Affirmed.

MATHIAS, J., and BROWN, J., concur.