Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Feb 04 2014, 10:10 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**PATRICIA CARESS MCMATH**
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Office of the Indiana Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE MATTER OF C.U., <br> A CHILD IN NEED OF SERVICES, | ) <br> ) <br> ) | |
| C.U. and J.U., | ) <br> ) | |
| Appellants-Respondents, | ) <br> ) | |
| vs. | ) <br> ) | No. 49A05-1307-JC-354 |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) <br> ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Danielle Gaughan, Judge Pro Tempore
Cause No. 49D09-1304-JC-12375

**February 4, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

C.U., Sr. ("Father") and J.U. ("Mother") (collectively, "the Parents") appeal the trial court's adjudication of their child, C.U. ("the Child"), as a child in need of services ("CHINS"). The Parents present a single issue for our review, namely, whether the evidence supports the trial court's determination that the Child is a CHINS under Indiana Code Section 31-34-1-1. We affirm.

## FACTS AND PROCEDURAL HISTORY

C.U. was born on December 22, 2000, to Father and the Child's biological mother. The Child and his siblings resided with the biological mother in Daviess County. In 2008, the Child and his siblings were found to be CHINS and were removed from the custody of the biological mother. When that CHINS case closed in 2012, the Child and his siblings were placed with Father and his wife, Mother, who subsequently adopted all of Father's children.

During the course of the Daviess County CHINS proceeding, C.U. had been treated as an in-patient and an outpatient for mental health issues. C.U. also received SSI benefits for "his mental and emotional disabilities." Transcript at 5. The Child also received services in 2012, and the same year Father and Mother engaged in services through DCS before the Child and his siblings were placed with the Parents. The Child continued in therapy for several months until shortly before April 2013. The therapy ended due to scheduling difficulties.

On April 2, 2013, the Child reported to a neighbor that Mother had abused him. The Child was transported to Riley Hospital, where medical personnel examined C.U.

and found petechiae[1] around both of the Child's eyes and on his neck, which is consistent with strangulation, and bruising and abrasions on his face, abdomen, arms, and legs. The Child also reported that Mother had sat on him and had hit and strangled him and that his parents hit him often. Medical personnel reported the case to DCS, and DCS placed the Child in the emergency shelter care section of Lutherwood in Indianapolis.

On April 4, DCS filed a request to file a petition alleging the Child was a CHINS and, with court approval, filed a petition alleging the Child to be a CHINS under Indiana Code Sections 31-34-1-1 and -2. The same day, the trial court held an initial hearing and a detention hearing, which the Parents attended. The Parents denied the allegations in the CHINS petition, and the trial court continued the Child's placement at the emergency shelter care section of Lutherwood. At some point the Child's behavior necessitated his transfer to the inpatient juvenile psychiatric ward at Community North Hospital. On May 12, the court held a fact-finding hearing. By the time of that hearing, the child had been discharged from Community North and was in the residential section of Lutherwood. At the conclusion of the hearing, Father's attorney asked the trial court to amend the CHINS petition to conform to the evidence. In particular, Father requested that trial court to consider the Child to be a CHINS under Indiana Code Section 31-34-1-6, but the trial court denied the motion. And on June 5, the court approved its fact-finding order, which provides in part:

---

[1] "Petechiae" are "pinpoint, round spots that appear on the skin as a result of bleeding under the skin. The bleeding causes the petechiae to appear red, brown or purple." Mayo Clinic, http://www.mayoclinic.org/symptoms/petechiae/basics/definition/sym-20050724 (last visited January 16, 2014). "Petechiae commonly appear in clusters and may look like a rash. Usually flat to the touch, petechiae don't lose color when you press on them." Id.

4. [The Child] is presently in a residential placement at Lutherwood and has been there since April 12, 2013.

5. Father wants [the Child] to stay in Lutherwood. He does not want [the Child] to live with him right now. Father admits refusing to pick [the Child] up at Lutherwood in April and also admits that he refused to participate in home builders [sic] services offered by MCDCS. By his own admission Father has not been to see [the Child] at Lutherwood.

6. The family has had previous DCS involvement in Davies[s] County in 2008. At that time a number of services were referred for [the Child]. [The Child] was then placed with Father and his wife and [the Child's] behaviors seemed to stabilize for a few months.

7. After a few months, however, the violent and aggressive behaviors returned.

8. Father states that [the Child] was in therapy when he first came to live with him; his last therapy appointment was a few months ago. Father does not believe that [the Child] benefits from therapy and that is why he did not participate with home builders [sic].

9. Father states that he "is done" after 5 1/2 years of "dealing with this."

10. Father acknowledges "whooping [the Child] with his hand."

11. Mother acknowledges that they do not want to participate in any more services. Mother feels the family has been through therapy, nothing has improved and they are not willing to put their other children through this anymore. Mother states that she would only want to be reunified with [the Child] if she knew he would not hurt the other children anymore.

12. On or about April 2, 2013[,] MCDCS received a report that [the Child] had been physically abused. CPS investigator[] Donald Summer was assigned to the case. He went over the allegations with Mother. [The Child] had small spots around his eyes and neck. Mother admitted putting [the Child] in a hold on the couch because of his severe behavioral problems. When he tried to leave the house, she put him in a hold on the floor; she admitted to straddling him on the floor. Mother indicated that [the Child] had been in therapy but the family had discontinued therapy.

13. Donald Summer also spoke to Father who admitting to giving [the Child] a whooping with his hand or a paddle.

14. Home Builders [sic] services were offered but the family refused. The parents said that [the Child] has had intensive services in the past and participating in these services would only disrupt the family.

15. Both parents refused to pick [the Child] up at Lutherwood. They said that his presence in the home would be disruptive and that he was a danger to the family.

16. Donald Summer observed [the Child] to have may marks and bruises on his body. He had marks on his neck and around his eyes.

17. [The Child] was removed from the home and the allegations were substantiated because of statements by medical personnel and because of parent's [sic] refusal to pick him up at Lutherwood.

18. Candra Limburg is the ongoing family case manager assigned to this case. She has referred wrap[-]around services for this family but the parents have not participated.

19. MDCDS is recommending services for [the Child], as well as services for the family

20. Melissa Lewis is a residential therapist at Lutherwood and is the residential therapist for [the Child] and has been since his admission to Lutherwood on April 12, 2013. Ms. Lewis recommends continued therapy for [the Child] because he struggles with anger management and aggressive outbursts. Ms. Lewis also recommends family therapy so that issues are being addressed with a team approach. Ms. Lewis also recommends that the parents visit with [the Child]. To the best of her knowledge, parents have not visited him.

21. Parents concede that [the Child] is a child in need of services, but argue that he is a child in need of services under I.C. 31-34-1-6 because [he] substantially endangers his own health and the health and safety of his family. [The Child's] behaviors are challenging, aggressive and destructive at times but parents stopped therapy for a few months after the prior DCS involvement, have not participated in therapy since that time, have refused to pick [the Child] up at Lutherwood, have refused to participate in services or in [the Child's] treatment since [the Child] was placed in Lutherwood, and have not visited [the Child] since his placement at Lutherwood, in effect abandoning him.

22. The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal or neglect of the child's parents, guardian or custodian to supply the child with necessary food, clothing, shelter, medical care, education or supervision. [The Child] has behavioral problems; there has been prior DCS history and he has had therapy. The family, however, ended the therapy, and now does not want to participate in therapy and does not want him in the home. Services have been referred, family therapy has been recommended and both parents have refused to participate. They have never visited their son at Lutherwood. Parent's [sic] position seems to be that therapy has not helped in the past and will not help and so they have simply quit and refused to participate.

23. The child needs care, treatment or rehabilitation that he is not receiving and that he is unlikely to be provided or accepted without the coercive intervention of the court. The parents have refused to participate in services, they have refused to pick [the Child] up at Lutherwood, and they have refused to visit him at Lutherwood. Parents have made it clear that they do not want [the Child] home and think he should be institutionalized.

5

Appellant's App. at 55-58. The trial court then found that C.U. was a CHINS and continued his placement at Lutherwood.

On June 20, DCS filed its dispositional report, and on June 21 the trial court held the dispositional hearing. On the same date, the court issued its dispositional decree and parental participation order, continuing the Child's placement at Lutherwood and ordering the parents and siblings to participate in services as recommended by DCS. The Parents now appeal.

## DISCUSSION AND DECISION

The Parents appeal the trial court's adjudication of C.U. as a CHINS. Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court. The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3; Davis v. Marion Cnty. Dep't of Child Servs. (In re M.W.), 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. In re M.W., 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. Id.

6

Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); Menard, Inc. v. Dage–MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. Menard, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. Menard, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

The Parents contend that the evidence does not support the trial court's determination that the Child is a CHINS under Indiana Code Section 31-34-1-1. Specifically, they argue that the evidence does not support a finding that they were negligent because there is no evidence that the Child's "physical or mental condition was seriously impaired or seriously endangered as a result of the inability, refusal or neglect of the [C]hild's parent, guardian, or custodian to supply the child with necessary food, clothing[,] shelter, medical care, education or supervision, as required by I.C. § 31-34-1-1." Appellants' Brief at 8. We cannot agree.

The Parents rely on this court's opinion in <u>J.H. v. Ind. Dep't of Child Servs. (In re V.H.)</u>, 967 N.E.2d 1066, 1072 (Ind. Ct. App. 2012), where we reversed a CHINS adjudication and parental participation order. There, in April 2011 the mother called for police assistance when her sixteen-year-old daughter became physically aggressive with her. Based on a police report to the DCS that the daughter had been a victim of physical abuse, DCS began an investigation. In May 1, before the investigation had been completed, Mother again telephoned police after an altercation with the daughter. The daughter was arrested and placed at the emergency shelter care at Lutherwood. The trial court ultimately determined that the daughter was a CHINS.

On appeal, the mother challenged the trial court's finding of neglect and that the coercive intervention of the court was necessary to provide for the daughter's needs. Before the DCS had become involved, the mother had taken the daughter to Gallahue Mental Health Services for an assessment, where the daughter had been diagnosed with Oppositional Defiant Disorder. The daughter had attended three group therapy sessions before the April call to police. And the mother had helped to develop the daughter's individual education plan at school to include the special education services the daughter needed. Based on that evidence, showing that the mother was indeed providing for the daughter's needs, we reversed the CHINS adjudication and parental participation order. <u>Id.</u> at 1073.

The facts in <u>In re V.H.</u> are distinguishable. Here, the Parents initially participated in services when the DCS was involved prior to the Child's placement with the Parents and adoption by Mother. But, despite the Child's prior history of outbursts, violent

8

behavior, and prior institutionalizations, the Parents discontinued the Child's therapy due to "scheduling difficulties." Transcript at 30. When the Child's behavior escalated, Mother employed restraint techniques that had not been taught to her, resulting in an altercation with the Child in which the Child sustained petechiae on the neck and eyes consistent with choking as well as bruising and abrasions on his face, abdomen, arms, and legs. And following the Child's placement by the DCS in emergency shelter care, the Parents refused the DCS' recommendation that the Child return home with appropriate services. Instead, the Parents declined to pick up the Child from Lutherwood, did not visit the Child at Lutherwood, and refused to participate in services offered to them by the DCS. We agree with the trial court that such evidence supports a finding that the Parents abandoned the Child.

In sum, the Parents refused to provide shelter or treatment for the Child, leaving the Child's care in the hands of the DCS. Although the Parents testified that the Child needs to be institutionalized, they took no steps to acquire such treatment for him and only assured the continuation of that treatment by their non-participation in the Child's life. These facts support the trial court's determination that the Child' physical or mental condition was seriously impaired or seriously endangered as a result of the Parents' inability, refusal, or neglect in supplying the Child with the necessary shelter, medical care, or supervision and that the Child was in need of care, treatment, or rehabilitation that the Child was not receiving and was unlikely to be provided or accepted without the coercive intervention of the court. See Ind. Code § 31-34-1-1. The Parents' arguments to

9

the contrary amount to a request that we reweigh the evidence, which we will not do.[2]  In re M.W., 869 N.E.2d at 1270.

The Parents also argue that the trial court should have adjudicated the Child a CHINS under Indiana Code Section 31-34-1-6 because the Child substantially endangers his own health or the health of another, namely, his family members.  But we have already found that the evidence supports the trial court's findings and conclusion that the Child is a CHINS under Section 31-34-1-1.  Thus, whether the evidence would have supported a determination under Section 31-34-1-6 is not properly before us.  Moreover, the trial court observed that, when a CHINS petition is filed under Section 31-34-1-6, counsel must be appointed for the Child.  Here, when Father moved to amend the pleadings to conform to the evidence to consider a CHINS determination under Section 31-34-1-6, the trial court observed that the CHINS petition had not been filed under that section and, therefore, the Child had not been given the benefit of counsel.  As such, the trial court refused to consider a CHINS determination under Section 31-34-1-6.  The Parents have not shown that the trial court erred when it refused to make a CHINS determination under that statute.

Affirmed.

BAKER, J., and CRONE, J., concur.

---

[2]  The Parents also argue that the DCS "cannot carry its burden to prove Mother and Father were refusing to meet C.U.'s needs when it could not prove what Mother and Father had to do to meet his needs."  Appellant's Brief at 11-12.  But the Parents refused to provide shelter for the Child, at home or elsewhere, and left all decisions regarding his mental health care to the DCS.  That evidence satisfies the DCS' burden of proof.