Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 16 2014, 11:02 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JILL M. ACKLIN**
Acklin Law Office, LLC
Westfield, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**CHRISTINE REDELMAN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF                                  )
K.L., K.L., and K.G.,                              )
MINOR CHILDREN IN NEED OF SERVICES,                )
                                                   )
C.L.,                                              )
                                                   )
    Appellant-Respondent,                     )
                                                   )
        vs.                              )   No. 49A02-1310-JC-894
                                                   )
INDIANA DEPARTMENT OF CHILD SERVICES,              )
                                                   )
    Appellee-Petitioner.                      )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marilyn A. Moores, Judge
The Honorable Rosanne T. Ang, Magistrate
Cause No. 49D09-1303-JC-8408, 49D09-1303-JC-8409, and 49D09-1303-JC-8410

**July 16, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

C.L. ("Mother") appeals the trial court's order adjudicating her three minor children, K.ah.L, K.ri.L,[1] and K.G. ("the children"), as children in need of services ("CHINS").[2] Mother raises a single issue for our review, namely, whether the Indiana Department of Child Services ("DCS") presented sufficient evidence to support the court's adjudication that the children are CHINS. We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 5, 2013, the DCS filed its verified petition alleging the children to be CHINS. In relevant part, the DCS alleged as follows:

> On or about March 2, 2013, [DCS] determined by its Family Case Manager, Melissa Davidovich, that the children are in need of services because their mother . . . and [J.G., the father of K.G.], have failed to provide them with a safe and stable living environment free from physical abuse and substance abuse. On 3/2/13, 2-month old [K.G.] was taken to the hospital with a nose bleed. At the hospital, physicians discovered that[,] in addition to the nose bleed, [K.G.] had a busted blood vessel in her eye, three healing rib fractures, and a healing wrist fracture. The child abuse specialist reviewed these injuries and concluded they could only have been caused by blunt force trauma and were indicative of physical abuse. [Mother] and [J.G.] did not have plausible explanations for the infant's injuries. [J.G.], who is [K.G.'s] primary caregiver, admitted to ongoing use of marijuana as well as Percocet without a valid prescription. [Mother's] family members expressed concern that she has undiagnosed mental health issues. [K.ah.L.] reported that [J.G. had] hit [K.ri.L.] on the face with his hand. As a result of the foregoing, the coercive intervention of the court is necessary to ensure the children's safety and well-being.

Appellant's App. at 52. The court authorized the filing of the CHINS petition and ordered the children to be placed with their maternal grandmother.

---

[1] K.ah.L. and K.ri.L have substantially similar names. Our abbreviations follow the abbreviations employed by the parties on appeal and reference the last two letters of each child's first name.

[2] The children's fathers do not appeal the trial court's order.

2

On June 24 and August 19, 2013, the court held an evidentiary hearing on the CHINS petition. During that hearing, Dr. Cortney Demetris, a pediatrician at the Peyton Manning Children's Hospital at St. Vincent in Indianapolis, testified that it was her "medical opinion that the most likely cause of the injuries that were found on [K.G.] . . . is child abuse, nonaccidental trauma." Tr. at 47. Dr. Demetris further testified that injuries such as K.G.'s are almost always "traumatic injur[ies]," id. at 48, and, given that K.G. was only three-months old, "she was not able to do . . . anything . . . that could have led to the injuries without the knowledge of a caretaker," id. at 49.

Mother testified that she and J.G. shared a home. Family Case Manager ("FCM") Mary Price testified that J.G. admitted that he and Mother shared responsibility for the care of the children. FCM Davidovich testified that J.G., who was present at the time K.G.'s nose began to bleed, "had no idea how the child was injured" or even "if the child was injured." Id. at 31-32. And FCM Price testified that Mother thought the injuries "could be a birth defect" or "could have come from sneezing." Id. at 136. Dr. Demetris expressly ruled out these possibilities.

Laura West, a home-based therapist assigned by the DCS to this case, testified that she had been working with Mother and J.G. since shortly after the DCS became involved. West testified that they had "spent time . . . processing the acceptance of DCS involvement," and that Mother "continues to struggle with even knowing that something has happened." Id. at 83. West stated that this is important because "accepting the fact that something has happened to the child is something that you need to . . . help[] with maintaining the safety of the children in either parent's care." Id. at 84. West then stated

3

that she was not ready to close out her services with the family in light of the parents' inability to "accept[] that something has happened, non-accidental trauma[-]wise to the infant" and that, "if there's not acknowledgment in that then how . . . will the child be able to remain safe in their care." Id. at 87.

On September 3, 2013, the court entered findings of fact and conclusions thereon in which it adjudicated the children to be CHINS. In particular, the court found that K.G.'s injuries "were sustained while [she] was under the care, custody and control of her parents . . . and are indicative of non-accidental trauma," and that, in light of these injuries, "all three children who are under the care of [Mother and J.G.] are endangered until it can be assured that there are no issues of supervision, anxiety, or aggression to address." Appellant's App. at 138. Thereafter, on October 1, 2013, the court entered its dispositional order, which, among other things, ordered Mother to "follow all recommendations of the home[-]based therapist." Id. at 174. This appeal ensued.

## DISCUSSION AND DECISION

Mother asserts that the DCS failed to present sufficient evidence to support the court's adjudication of the children as CHINS. Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the

4

coercive intervention of the court. "A CHINS adjudication focuses on the condition of the child." N.L. v. Ind. Dep't of Child Servs. (In re N.E.), 919 N.E.2d 102, 105 (Ind. 2010). "[A] CHINS adjudication does not establish culpability on the part of a particular parent." Id. "Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents." Id. at 106.

The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. I.C. § 31-34-12-3; Davis v. Marion Cnty. Dep't of Child Servs. (In re M.W.), 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. In re M.W., 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. Id. A CHINS adjudication "may not be based solely on conditions that no longer exist," but the court should "consider the [family's] situation at the time the case is heard by the court." S.S. v. Ind. Dep't of Child Servs. (In re R.S.), 987 N.E.2d 155, 159 (Ind. Ct. App. 2013).

Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial Rule 52(A); Menard, Inc. v. Dage-MTI, Inc., 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. Menard, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. Id. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." Quillen v. Quillen, 671

N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal standard. Menard, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. Menard, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. Yoon v. Yoon, 711 N.E.2d 1265, 1268 (Ind. 1999).

Here, Mother first asserts that "the precise causation of K.G.'s rib fractures, bloody nose, and contusion to her eye[] are unknown," and, as such, there is no evidence or reasonable inference therefrom to conclude that the children are endangered by her parenting. Appellant's Br. at 14. Mother's reading of the record is incorrect. Dr. Demetris testified that it was her "medical opinion that the most likely cause of the injuries that were found on [K.G.] . . . is child abuse, nonaccidental trauma." Tr. at 47. Dr. Demetris further testified that, given that K.G. was only three-months old, "she was not able to do . . . anything . . . that could have led to the injuries without the knowledge of a caretaker." Id. at 49. And it is not disputed that Mother shared caretaking responsibilities for the children. Insofar as Mother proffers alternative evidence on appeal or otherwise challenges the weight of Dr. Demetris' testimony, we will not reweigh the evidence on appeal. The evidence supports the trial court's finding that the children are endangered by Mother's parenting.

Mother also asserts that "[i]t is apparent . . . that the barrier to reunification of [Mother] to her children is [her] failure to admit, accept or acknowledge the causation of

6

K.G.'s injuries." Appellant's Br. at 15. Mother then asserts that the court's order for her to follow the recommendations of the home-based therapist are contrary to <u>Gilfillen v. State</u>, 582 N.E.2d 821 (Ind. 1991). In <u>Gilfillen</u>, the trial court revoked a probationer's probation after he had maintained his innocence with respect to his child molestation conviction during his court-ordered counseling, and the trial court concluded that the probationer therefore failed to successfully complete that condition of his probation. Our Supreme Court reversed the revocation of probation, concluding that, while the order for counseling was within the trial court's discretion:

> Gilfillen regularly attended the ordered counseling sessions. Also, he did not plead guilty and, therefore, has not admitted to having any child molesting problem. In fact, he continues to protest his innocence. Under these circumstances, requiring Gilfillen to admit that he has a problem with child molesting or face revocation of probation is tantamount to requiring that he admit that he is guilty of the crimes charged. Clearly, this is unacceptable.

<u>Id.</u> at 824.

Gilfillen does not control here, however. While the trial court has ordered Mother to "follow all recommendations of the home[-]based therapist," Appellant's App. at 174, neither the trial court nor the home-based therapist has ordered Mother to admit criminal culpability. Rather, West's testimony reflected her concern that Mother had failed to acknowledge that K.G. had suffered any injuries resulting from nonaccidental trauma. Recognition of this fact is not tantamount to self-incrimination and, according to West, would be of therapeutic benefit to Mother and the children. We cannot say that the trial court's reliance on this testimony or its order that Mother follow the recommendations of

the home-based therapist is clearly erroneous.    We affirm the trial court's order

adjudicating the children to be CHINS.[3]

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.

---

[3] Although the DCS separately addresses Mother's statement that the coercive intervention of the court is not necessary, we do not read Mother's statement as an argument separate from the arguments addressed in this memorandum decision.