## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 09 2017, 7:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bryan M. Abell
Clark County Public Defender
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of R.Y. and B.H. (Minor Children) Children in Need of Services,

S.H.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

March 9, 2017

Court of Appeals Case No. 10A01-1608-JC-1851

Appeal from the Clark Circuit Court

The Honorable Vicki L. Carmichael, Judge

The Honorable Joni L. Grayson, Magistrate

Trial Court Cause Nos. 10C04-1603-JC-33 and 10C04-1603-JC-34

**Najam, Judge.**

## Statement of the Case

S.H. ("Mother") appeals the trial court's adjudication of two of her minor children, R.Y. and B.H. ("the Children"),[1] as children in need of services ("CHINS"). Mother raises four issues for our review, which we consolidate and restate as whether the trial court's judgment is clearly erroneous. We affirm.

## Facts and Procedural History

In March of 2017, Mother lived with her boyfriend, C.G.,[2] at his residence. Mother lived there with three of her children—the Children and infant K.H.—as well as a minor child of C.G.'s. On March 17, K.H. died of sudden infant death syndrome.

The Indiana Department of Child Services ("DCS") began an investigation into K.H.'s death. Pursuant to that investigation, Mother submitted to a drug screen. She tested positive for amphetamines and methamphetamines.

Around that same time, Charlestown Police Department Detective Tejuan Johnson conducted two controlled drug buys at C.G.'s residence. Detective

---

[1] The Children have different fathers, but neither father participates in this appeal.

[2] C.G. is not the father of either of the Children.

Johnson then obtained a search warrant for the residence, which he executed on March 26 around 11:00 p.m.

[5] In executing the warrant, Detective Johnson discovered the Children—R.Y. was fourteen years old and B.H. was eight years old—alone inside the residence. The Children informed the officers that Mother and C.G. had gone to the store. Also inside the residence, the officers discovered methamphetamine and paraphernalia in the bedroom that Mother and C.G. had shared.

[6] While officers were searching the residence, L.Y., the father of R.Y., approached the residence from across the street. L.Y. told Detective Johnson that he was there to decorate Easter eggs. However, Detective Johnson knew that C.G. had a "no trespass warning issued" against L.Y. and, as such, Detective Johnson arrested L.Y. for violating that order. Tr. Vol. 2 at 8. During L.Y.'s encounter with the officers, he "never acknowledged himself as the babysitter" for the Children. *Id.* at 22.

[7] Officers repeatedly attempted, over several hours, to have Mother take custody of the Children, but she "refused" and said she instead was going to get a lawyer in light of the apparent allegations of possession of methamphetamine and paraphernalia. *Id.* at 10. C.G. similarly went "on the run." *Id.* at 14. Officers took custody of the Children and informed DCS. The Children's maternal grandmother eventually picked the Children up from the police station

around 5:00 a.m. on March 27. Eventually, DCS placed R.Y. in the care of her maternal grandmother and B.H. in the care of her father.

[8] The DCS alleged the Children were CHINS. At an ensuing fact-finding hearing, Mother appeared, even though she was incarcerated,[3] and acknowledged that she could use substance abuse treatment and relapse prevention services. Mother also asserted that she had left the residence with C.G. on March 26 to go to the store and that, while she was there, C.G. had left the store and she had to go find him, which prevented her from taking custody of the Children after police had arrived at the residence. Mother further testified that she had left L.Y. at the residence as a babysitter for the Children. The trial court expressly found that Mother's testimony was not credible. The court also heard testimony from Detective Johnson, on which the court relied when it adjudicated the Children to be CHINS. Subsequently, the court entered its dispositional orders with respect to each of the Children. This appeal ensued.

## Discussion and Decision

[9] Mother appeals the trial court's adjudication of the Children as CHINS. Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's

[3] On appeal, Mother says she had been released from incarceration by the time of the later dispositional hearing, but the court's dispositional order says otherwise, and Mother cites no evidence in the record to support her statement. *See* Appellant's App. Vol. 2 at 39.

physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court. DCS has the burden in the trial court to prove by a preponderance of the evidence that a child is a CHINS. Ind. Code § 31-34-12-3 (2016); *Davis v. Marion Cty. Dep't of Child Servs. (In re M.W.)*, 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication on appeal, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. *In re M.W.*, 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. *Id.*

[10] Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial R. 52(A); *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. *Menard*, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996).

[11] On appeal, Mother asserts that her case is "substantially similar" to *Perrine v. Marion County Office of Child Services*, 866 N.E.2d 269 (Ind. Ct. App. 2007). In *Perrine*, mother was arrested as part of a routine probation sweep, which located paraphernalia commonly used for methamphetamine consumption in the bedroom of a houseguest. Mother admitted to using methamphetamine a few days prior to the probation sweep. As a result of her arrest, DCS filed a petition alleging her fourteen-year-old daughter was a CHINS based on mother's failure to provide her child with a safe and stable home, free from drug use and neglect. The trial court found the child to be a CHINS. In reviewing the evidence on appeal, we held that the evidence did not support a finding that mother used methamphetamine in front of her daughter. *Id.* at 276. We reversed, stating that a "single admitted use of methamphetamine, outside the presence of the child and without more, is insufficient to support a CHINS determination." *Id.* at 277.

[12] *Perrine* is plainly inapposite to the instant facts. Here, the evidence most favorable to the trial court's judgment demonstrates each of the following facts:

- Mother had tested positive for amphetamines and methamphetamines on March 18, 2016, one day after K.H.'s death;
- Mother lived at C.G.'s residence with the Children;
- Detective Johnson had conducted two controlled drug buys at that residence around the time of K.H.'s death;
- On March 26, around 11:00 p.m., Detective Johnson executed a warrant to search the residence and discovered methamphetamine and paraphernalia in a bedroom;
- Detective Johnson also discovered the Children home alone;

- Mother refused to take custody of the Children following the execution of the search warrant, and the Children remained in the custody of the police until about 5:00 a.m. the next day;
- Mother was incarcerated at the time of the fact-finding hearing;
- Mother admitted to the trial court that she needs substance abuse treatment and relapse prevention services.

[13] Thus, unlike in *Perrine*, the facts here support the trial court's judgment that the Children's mental or physical conditions were seriously endangered by Mother's inability, refusal, or neglect to supply necessary care, shelter, or supervision, and that the Children need care that they are not receiving and that is unlikely to be provided without the coercive intervention of the court. *See* I.C. § 31-34-1-1. Indeed, Mother's arguments to the contrary, and her challenges to several facts found by the trial court, simply disregard the evidence most favorable to the trial court's judgment and seek to have this court substitute Mother's preferred version of the facts in place of those most favorable to the trial court's judgment. We will not do so. We reject Mother's arguments on appeal and affirm the court's adjudication that the Children are CHINS.

[14] Affirmed.

Bailey, J., and May, J., concur.