**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Sep 25 2014, 10:15 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT T.F.:

**RUTH A. JOHNSON**
Marion County Public Defender
**LILABERDIA BATTIES**
Batties & Associates
Indianapolis, Indiana

ATTORNEY FOR APPELLANT C.S.:

**DANIELLE L. GREGORY**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
DEPARTMENT OF CHILD SERVICES:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
**DAVID E. COREY**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF: P.S. AND K.S., CHILD IN NEED OF SERVICES, | ) )  ) |
| T.F. (Mother) and C.S. (Father), | ) ) |
| Appellants-Respondents, | ) ) |
| vs. | )  No.  49A02-1402-JC-93 ) |
| INDIANA DEPARTMENT OF CHILD SERVICES, | ) ) ) |
| Appellee-Petitioner, | ) ) |
| And | ) ) |
| CHILD ADVOCATES, INC., | ) ) |
| Appellee-Guardian Ad Litem. | ) |

**September 25, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

T.F. (Mother) and C.S. (Father) appeal the juvenile court's judgment finding P.S. and K.S. to be Children in Need of Services (CHINS) pursuant to Indiana Code section 31-34-1-1. Mother argues that the evidence before the court was insufficient to support a determination that P.S. and K.S. were CHINS. Father argues that he was denied effective assistance of counsel and that he was denied due process when the juvenile court denied his request for a new trial after he failed to appear at a factfinding hearing. Finding that the evidence was sufficient to support a determination that P.S. and K.S. were CHINS and that Father was not denied effective assistance of counsel or due process, we affirm.

FACTS

P.S. and K.S. (the Children) are twins. They were born to Mother and Father on July 24, 2013. The Children were born prematurely and had to spend their first fifty-five days in the hospital. In September 2013, the Department of Child Services (DCS) received a report alleging that Mother was neglecting the Children, who were then living at Mother's home. The Children were not yet two months old and were in need of

2

follow-up medical care. The report stated that Mother seemed reluctant to get the Children to the necessary appointments, and that she said she would get them there if it did not interfere with her work schedule. Later that same month, DCS received another report, this time alleging that Father had struck Mother and stolen some items from her in the presence of the Children. Police were dispatched to Mother's home as a result. At this point, DCS assigned a Family Case Manager (FCM) and directed her to assess the situation.

The FCM spoke with the pediatric doctors who were caring for the Children. The doctors expressed concern for the Children's situation at home due to the fact that neither parent had visited the Children often while they were in the hospital. The doctors also noted that the Children would need frequent doctor visits for the next few months to receive vaccinations as well as treatment for their eyes, which were not fully mature.

During October 2013, DCS received three more reports alleging that Mother and Father were neglecting the Children. The reports noted that K.S. had been taken to the Pediatric Intensive Care Unit at St. Vincent Hospital because of shallow breathing. P.S. was already at the hospital for other reasons. The report noted continuing concern that neither Mother nor Father were taking the Children to their necessary doctor appointments and also detailed more incidents of domestic violence. The FCM interviewed Mother and Father, who both admitted to multiple incidents of domestic violence. The FCM also went to the hospital, where she observed K.S. on a feeding tube.

3

On October 28, 2013, DCS filed a petition alleging the Children to be CHINS. Later that same day, the juvenile court granted DCS's request to file the petition and held an initial hearing. During the hearing, the juvenile court appointed counsel for Mother but not for Father, as he desired to hire private counsel. The juvenile court also ordered that the Children remain in Mother's physical custody. Father was not granted any parenting time because by this time Mother had obtained a protective order preventing Father from having any contact with her or the Children.

A week later, on November 4, 2013, as a result of Mother's failure to attend her scheduled medical training sessions as well as Mother's own statements that she was unable to care for the Children, DCS requested that the Children be removed from Mother's physical custody. Two days later, the juvenile court held a detention hearing and ordered the Children to be removed from Mother's home and placed in foster care. The juvenile court also appointed counsel for Father after he informed the court that he had been unable to obtain private counsel.

On November 14, 2013, the juvenile court held a pretrial hearing in which the court maintained the Children's placement in foster care, denied Mother's request to attend the Children's medical appointments due to her recent "explosive behavior," and set the matter for a factfinding hearing to take place a month later. Appellant's App. p. 78-79. Both Mother and Father were present at the November 14 hearing and represented by counsel and both were notified of the date and time of the factfinding hearing. However, neither Mother nor Father managed to attend the factfinding hearing

4

on December 19, 2013. During this hearing, the juvenile court found the Children to be CHINS.

The juvenile court held a dispositional hearing on January 16, 2014, at which the court ordered Mother and Father to participate in reunification services. The court also ordered the Children's continued placement in the care of their paternal grandfather.[1] During this hearing, Father moved for a new trial and the court denied his motion. Mother and Father now appeal.

<u>DISCUSSION AND DECISION</u>

<u>I. Mother's Argument</u>

Mother argues that the evidence was insufficient to support the juvenile court's determination that the Children were CHINS. The burden is on the State to prove, by a preponderance of the evidence, that the Children are CHINS. I.C. § 31-34-12-3. When reviewing the sufficiency of the evidence, we consider only the evidence most favorable to the judgment and the reasonable inferences flowing therefrom. <u>In re M.W.</u>, 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). We will not reweigh the evidence or judge the credibility of the witnesses. <u>Id</u>. We will consider only the evidence that supports the juvenile court's judgment and the reasonable inferences drawn therefrom. <u>Id</u>.

Indiana Code section 31-34-1-1 reads:

A child is a child in need of services if before the child becomes eighteen (18) years of age:

---

[1] It is unclear from the record at what point the children were placed with their paternal grandfather.

(1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) the child needs care, treatment, or rehabilitation that:

(A) the child is not receiving; and

(B) is unlikely to be provided or accepted without the coercive intervention of the court.

Therefore, before a child can be adjudicated a CHINS, the State is required to show three basic elements: (1) that the parent's actions or inactions have seriously endangered the child, (2) that the child's needs are unmet, and (3) that those needs are unlikely to be met without State coercion. In re S.D., 2 N.E.3d 1283, 1287 (Ind. 2014).

In this case, the juvenile court was presented with evidence that Mother and Father had engaged in multiple acts of domestic violence, sometimes in front of the Children. Although Father and Mother disagreed as to who was at fault, both admitted to incidents involving one threatening the other with a knife and even a gun. We note at this point that, in making a CHINS determination, the juvenile court focuses on the condition of the child, and is not concerned with the culpability of the individual parents. In re N.E., 919 N.E.2d 102, 105 (Ind. 2010). A CHINS determination is simply a determination that the child is in need of services. Id.

Consequently, evidence of domestic violence can serve as the basis of a CHINS finding. In this case, Mother admitted that Father hit her while in the car and in the

6

presence of P.S. Our Supreme Court has recognized that witnessing incidents of domestic violence, even if the children are infants or toddlers, can cause trauma. In re E.M., 4 N.E.3d 636, 644-45 (Ind. 2014). The Court noted that "the developing brain is most vulnerable to the impact of traumatic experiences before age one—and during the first three years, those experiences actually change the organization of the brain's neural pathways." Id. at 644 (quotation omitted).

Furthermore, the juvenile court was presented with evidence that the Children had required multiple visits to the hospital and would continue to require further medical appointments and treatment as a result of their fragile condition. Mother had missed several of her medical training sessions and, on at least one occasion, caused a scene in the hospital by attempting to take her Children at a time when they were in need of further treatment, claiming that she did not need help from the doctors. Mother at one point held P.S. so tightly in an attempt to remove him from the hospital that the staff feared for his health. Mother had also stated that she was unable to care for both of the Children at the same time. There was no evidence indicating that Father was able and willing to get the Children to their appointments in Mother's absence.

In light of this, we find that the evidence before the juvenile court was sufficient to support a finding that the Children are CHINS. As Mother does not dispute the findings of the juvenile court, her argument amounts to a request to reweigh the evidence, which we will not do on appeal.

7

## II.  Father's Arguments

### A.  Ineffective Assistance of Counsel

Father claims that he was provided with ineffective assistance of counsel.  Our Supreme Court has recognized that indigent parents have a statutory right to counsel in CHINS proceedings.  In re G.P., 4 N.E.3d 1158, 1163 (Ind. 2014) (discussing Indiana Code section 31-34-4-6).  Discussing juvenile statutes generally, the Court has noted that CHINS proceedings and proceedings to terminate parental rights are part of "an interlocking statutory scheme" and that "[b]oth statutes aim to protect the rights of parents in the upbringing of their children, as well as give effect to the State's legitimate interest in protecting children from harm."  In re N.E., 919 N.E.2d at 108.

In the termination of parental rights context, the Court has held that when parents claim their counsel was ineffective, "the focus of the inquiry [is] whether it appears that the parents received a fundamentally fair trial whose facts demonstrate an accurate determination."  Baker v. Marion Cnty. Office of Family and Children, 810 N.E.2d 1035, 1041 (Ind. 2004).

> The question is not whether the lawyer might have objected to this or that, but whether the lawyer's overall performance was so defective that the appellate court cannot say with confidence that the conditions leading to the removal of the children from parental care are unlikely to be remedied and that termination is in the child's best interest.

Id.  We adopt the same analysis in this case.

Father argues that his counsel provided him with ineffective assistance primarily as a result of counsel's failure to communicate adequately with Father.  Father points out

8

that his appointed counsel did not appear at the pretrial hearing and Father had to be represented by substitute counsel. Counsel first appeared on Father's behalf at the factfinding hearing, which Father failed to attend. At this time, counsel had never met with Father, nor had she spoken with him or attempted to contact him. Father claims that he was absent from the factfinding hearing as a result of counsel's failure to remind him.

We note that Father was informed of the date and time of the factfinding hearing and his failure to attend cannot be attributed to his counsel. Had he been in attendance, he could have informed counsel of his version of events. Counsel represented Father in his absence and cross-examined two DCS witnesses. Consequently, the juvenile court's findings reflect both Mother's and Father's versions of the incidents of domestic violence. However, as previously noted, a CHINS proceeding is concerned with the condition of the child. The existence of domestic violence is what was at issue, thus, Father's concern as to who was at fault is misplaced. In light of all this, we are not persuaded that the process was fundamentally unfair.

Additionally, regardless of counsel's performance in this case, Father fails to indicate how this performance affected the accuracy of the juvenile court's determination that the Children were CHINS. Father notes that "[w]ithout communicating with Father at least one time prior to trial, [counsel] could not have determined Father's version of the events." Appellant's Br. p. 11. However, Father is silent as to what his version of events would have been or how his version would have led the juvenile court to determine that the Children were not CHINS. As Father has given us no reason to question the juvenile

9

court's conclusion that the Children were CHINS, we have no reason to find that Father's counsel was ineffective.

## B. Due Process

Father next argues that he was denied due process when the juvenile court denied his motion for a new trial. Our Supreme Court has noted that "[d]ue process at all stages of a CHINS case is [] vital" because any procedural irregularities "'may be of such import that they deprive a parent of procedural due process with respect to a potential subsequent termination of parental rights.'" In re K.D., 962 N.E.2d 1249, 1258 (Ind. 2012) (quoting In re J.Q., 836 N.E.2d 961, 967 (Ind. Ct. App. 2005)).

Here, Father's argument revolves around his absence from the December 19 factfinding hearing in which the Children were adjudicated CHINS. Father argues that he "has been denied a meaningful and fair opportunity to be heard in violation of his due process rights at the CHINS adjudication stage of the proceedings due to his lack of presence . . ." Appellant's Br. p. 16-17. Father notes that he was incarcerated subsequent to the November 14 hearing and was not released until the day before the December 19 hearing. He also notes that he called his counsel to inquire about the hearing on the day of his release but counsel failed to return his call prior to the hearing.

Father was personally informed of the December 19 factfinding hearing at the November 14 pretrial hearing that he attended. Father failed to appear at the December 19 hearing but did appear at the dispositional hearing held on January 16 where "he testified he became confused about the time the Fact Finding Hearing was to start and

therefore did not appear." Appellant's Br. p. 16. Indiana Code section 31-32-1-4(d) states that written notice of a hearing in a CHINS proceeding is not required if verbal notice has been given by the court at an earlier proceeding at which the individual to be notified is present. Even though written notice was not required in this case, Father testified that he was given additional written notice in the form of a court card that listed the date and time of the December 19 factfinding hearing. Tr. p. 84.

Due process requires "'the opportunity to be heard in a meaningful time and in a meaningful manner.'" In re K.D., 962 N.E.2d at 1257 (quoting Matthews v. Eldridge, 424 U.S. 319, 333 (1976)). In this instance, Father does not challenge the procedures followed by the juvenile court so we need not engage in any analysis of these procedures. Instead, Father argues that the juvenile court was required to hold the factfinding hearing a second time because Father was unsure of what time the original hearing was to be held and thus failed to appear altogether. We cannot agree with Father's contention. Father was afforded an opportunity to be heard in a meaningful time and manner and he chose not to take advantage of that opportunity.

The judgment of the juvenile court is affirmed.

KIRSCH, J., and ROBB, J., concur.