# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**JENNIFER M. YOUNG**
Fort Wayne, Indiana

**DENIS L. KOEHLINGER**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**MITCH GERBER**
Fort Wayne, Indiana

**ROBERT J. HENKE**
DCS Central Administration
Indianapolis, Indiana

FILED
Apr 30 2013, 9:19 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN THE MATTER OF: | ) |
| | ) |
| R.S. (Minor Child), Child in Need of Services, | ) |
| | ) |
| And | ) |
| | ) |
| S.S. (Mother) & B.M. (Father), | ) |
| | ) |
| Appellants-Respondents, | ) |
| | ) |
| vs. | )   No. 02A05-1208-JC-422 |
| | ) |
| THE INDIANA DEPARTMENT OF | ) |
| CHILD SERVICES, | ) |
| | ) |
| Appellee-Petitioner.. | ) |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Charles F. Pratt, Judge
Cause No. 02D08-1204-JC-149

**April 30, 2013**

**OPINION - FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellants-Respondents, S.S. (Mother) and B.M. (Father), (Collectively, Parents), appeal the trial court's determination that their infant daughter, R.S. (R.S.), is a child in need of services (CHINS).

We reverse.

## ISSUE

Parents raise one issue, which we restate as: whether there is sufficient evidence to support the trial court's determination that R.S. is a CHINS.

## FACTS AND PROCEDURAL HISTORY

In the spring of 2011, the Allen County Department of Child Services (DCS) filed petitions to terminate the parental relationship between Parents and their three minor children, three-year-old S.S., two-year-old A.M., and one-year-old S.M. Hearings on the petitions were held in September, October, November, and December 2011. Testimony at the hearings revealed that S.S., A.M., and S.M. are all special needs children who require occupational, physical, speech, and developmental therapies. The evidence also revealed that Parents did not have adequate housing or financial resources to care for their three children. In addition, Parents did not complete court-ordered educational and therapeutic treatment programs to address their low cognitive functioning and personality disorders. They also had elevated scores on the Child Abuse Potential Inventories. The

trial court issued orders granting the petitions to terminate the Parents' rights to their three children on March 12, 2012.

One month later, on April 26, 2012, Mother gave birth to R.S. The following day, before Mother and R.S. were discharged from the hospital, DCS removed R.S. from Parents based solely on the family's past history and evidence given during the termination hearings of the three children. On May 24, 2012, DCS filed a petition alleging that R.S. was a CHINS. All allegations in the petition related to Parents' history with S.S., A.M. and S.M. There were no specific factual allegations that R.S. needed care that she was not receiving.

The trial court held a hearing on the petition in June 2012. All DCS case workers and supervisors testified that R.S. was removed from Parents based solely on the family's history before R.S.'s birth. Further testimony revealed that R.S. was healthy and tested negative for drugs at birth. Mother receives approximately $700 per month in social security disability benefits, and Father is now making minimum wage. Following the termination of their parental relationships with S.S., A.M., and S.M., Parents moved out of the large home they had for themselves and their three children and moved into a hotel for two weeks while they waited for their current residence to become available. They now share the $315 per month bill for rent, gas, and water, and have enough money left over to purchase adequate food, clothing, and other necessities for their daughter.

During visits with R.S., Parents appropriately fed, interacted with, and nurtured R.S. A DCS Investigator testified that the Parents' residence is clean and appropriate for

R.S. Parents have adequate formula, diapers, and clothing for R.S. R.S.'s foster mother testified that she has observed Parents with R.S. and has not seen any behavior that concerns her. A DCS case worker testified that before R.S. was born, Father was accused of, but not charged with, molesting a child that lived in Parents' home. DCS substantiated the allegations, and Father was appealing the substantiation at the time of the hearing. Father also has a 2011 misdemeanor conviction for public indecency for wearing his pants too low. Mother has a 2012 theft conviction.

Although Mother suffers from a personality disorder, post-traumatic stress, and a learning disability, she discontinued her medication during her pregnancy with R.S. because she was worried about her baby's health. At the time of the hearing, Mother had a medical appointment scheduled so that she could resume taking her medication.

When asked why she thought she was in a better position to parent now than she had been in the past, Mother responded as follows:

> Because, um, I've learn[ed] from my past. I know I messed up in the past. And now since I feel and I know that I'm stable. I have everything I need for her and I know I can do this. I can raise my child.

(Transcript p. 88). Following the hearing, on June 20, 2012, the trial court issued an order adjudicating R.S. to be a CHINS. The order provides in relevant part as follows:

1.    The court may rely on an historic pattern of a parent's behavior in determining whether a child is in need of services. . . .

          *                    *                    *

6.    Given the close proximity of time from which their parental rights to other children were terminated and that fact that most other significant reasons for which the termination order was entered have

not been corrected, this court finds and concludes that the child's physical and and/or mental condition is seriously impaired or at risk as a result of the parents' inability to provide the child with the necessary shelter and supervision.

Parents now appeal. We will provide additional facts when necessary.

## DISCUSSION AND DECISION

The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects the fundamental rights of parents in directing the care, custody, and control of their children. *In re T.H.I,* 856 N.E.2d 1247, 1250 (Ind. Ct. App. 2006). However, these rights are limited, and the State has the authority under its *parens patriae* power to intervene when necessary to protect the health and safety of children. *Id.*

The purpose of a CHINS adjudication is to protect children rather than to punish parents. *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). To that end, a juvenile court need not wait until a tragedy occurs to intervene. *In re. A.H.*, 913 N.E.2d 303, 305 (Ind. Ct. App. 2009).

Here, Parents' sole argument is that there is insufficient evidence to support the trial court's CHINS determination with respect to R.S.. Because the juvenile court entered findings of fact and conclusions of law, we apply a two-tiered standard of review. *Parmeter v. Cass County Department of Child Services*, 878 N.E.2d 444, 450 (Ind. Ct. App. 2007). We first consider whether the evidence supports the factual findings and then whether the findings support the judgment. *Id.* While we defer substantially to findings of fact, we do not do so to conclusions of law. *Id.* DCS has the burden of

proving by a preponderance of the evidence that a child is a CHINS. *In re A.H.*, 751

N.E.2d 690, 695 (Ind. Ct. App. 2001), *trans. denied.*

Indiana Code section 31-34-1-1- provides:

A child is a [CHINS] if before the child becomes eighteen (18) years of age:

(1) The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and

(2) The child needs care, treatment, or rehabilitation that:
    (A)    the child is not receiving; and
    (B)    is unlikely to be provided or accepted without the coercive intervention from the court.

Here, our review of the evidence reveals that Parents' parental relationships with S.S., A.M., and S.M. were terminated in part because the Parents lacked financial resources and adequate housing to properly care for their three special needs children who all required occupational, physical, speech, and developmental therapies. However, R.S. is a healthy infant who tested negative for drugs. Mother now receives approximately $700 per month in social security disability benefits, and Father has a minimum wage job. They share their monthly bill for rent, gas, and water, and have enough money left over to purchase adequate food, clothing, and other necessities for R.S. Their residence is clean and appropriate for R.S. During visits with R.S., Parents appropriately fed and nurtured their daughter.

This evidence simply does not support the trial court's conclusion that the most significant reasons for which the prior termination order was entered have not been corrected, and R.S.'s physical and/or mental condition is seriously impaired or at risk as a result of the parents' inability to provide the child with the necessary shelter and supervision. A CHINS adjudication focuses on the condition of a child, and whether that child needs services. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). It in no way challenges the general competency of a parent to continue a relationship with a child. *Id.* Only when the State moves to terminate a parent's rights does an allegation of fault attach. *Id.*

Further, a CHINS adjudication may not be based solely on conditions that no longer exist. *Matter of D.T.*, 547 N.E.2d 278, 284 (Ind. Ct. App. 1989), *trans. denied.* The trial court should also consider the parents' situation at the time the case is heard by the court. *In re C.S.*, 863 N.E.2d 413, 418 (Ind. Ct. App. 2007), *trans. denied.*

Here, it is apparent that Parents have made positive changes in their lives. This is something for which we should applaud them rather than condemn them through coercive action. *See In re V.H.,* 967 N.E.2d 1066, 1073 (Ind. Ct. App. 2012). Accordingly, we reverse the trial court's order determinating that R.S. is a CHINS.

CONCLUSION

Based on the foregoing, there is insufficient evidence to support the trial court's determination that R.S. is a CHINS.

Reversed.

BRADFORD, J. and BROWN, J. concur