## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 29 2016, 9:37 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Carmel, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Deputy Attorney General

James D. Boyer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

IN THE MATTER OF C.T.,
Child in Need of Services,

N.T.,

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 29, 2016

Court of Appeals Case No.
49A04-1607-JC-1667

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

The Honorable Jennifer Hubartt, Magistrate

Trial Court Cause No.
49D09-1602-JC-459

**Najam, Judge.**

# Statement of the Case

[1]     N.T. ("Mother") appeals the juvenile court's adjudication of her minor child C.T. ("Child") as a Child in Need of Services ("CHINS"). Mother raises a single issue for our review, namely, whether the juvenile court's adjudication of Child as a CHINS is clearly erroneous. We affirm.

# Facts and Procedural History

[2]     The facts as found by the juvenile court, following a fact-finding hearing, are not in dispute:

> 5. On 2/4/16, the Marion County Sheriff's Department (hereinafter MCSD) served a narcotics warrant at [Mother's] home . . . . MCSD received a tip that the individual named in the warrant, [Mr. S.,] was in the home. . . . [Mother] lived in the home with her son, [Child].
>
> 6. Upon MCSD['s] arrival [at] the home, [Mother] answered the door and advised MCSD that [Mr. S.] was not at the home. [Mother] stepped outside to speak to MCSD on the porch.
>
> 7. Shortly thereafter, a male stepped outside and advised MCSD that [Mr. S.] was in fact inside the home.
>
> 8. MCSD then made entry [in]to the home. . . .
>
> 9. Upon entry . . . MCSD observed [Child] at the top of/coming down the stairs of the home from the bedroom area.

10.   . . . MCSD found [Mr. S.] in an upstairs bedroom.  Also found in the bedroom were what Officer [James] Russo, based up[on] his training and experience, believed to be methamphetamine, heroin, and drug paraphernalia.

* * *

15.  [Mother] advised Officer Russo and [Family Case Manager, or "FCM" Paul] Paris that [Mr. S.] was renting a room at the home and she was unaware that he had drugs in the room he was renting.  [Mother] later stated to Officer Russo that she has known [Mr. S.] for years.

16.  [Child] stated to FCM Paris that he loved [Mr. S.] and did not want him to be taken away from the home.

* * *

21.  On 2/8/16, immediately prior to the Initial Hearing . . . [M]other provided a negative drug screen to [the Indiana Department of Child Services, or "DCS"]. . . .

22.  Two days after the Initial Hearing, on 2/10/16, [M]other provided a drug screen to FCM Karon Donaldson . . . which was positive for THC (marijuana) and for buprenorphine (Suboxone). [Mother] is not prescribed Suboxone.

* * *

24.  On 3/16/16, FCM Donaldson's Supervisor, Dorothy Winder, offered to provide [Mother] with a drug screen at the Marion County Superior Court, Juvenile Division.  [Mother] failed to submit to the screen.  [Mother] advised Ms. Winder that

she could not urinate and then advised Ms. Winder that she had to leave the Court building due to her transportation leaving.

\* \* \*

26. [Mother] has [an] extensive history with DCS, including a CHINS case involving [Child] which involved [Mother's] drug use. That case was open from September[] 2014 until September[] 2015[,] at which time [Child] was reunified with [Mother].

Appellant's App. Vol. II at 92-94. In light of those findings, the court concluded that Child's physical or mental condition is seriously impaired or endangered "as a result of the home environment provided by [Mother];" that Child "is in need of [a] safe and stable home environment, free from drug use by his [M]other;" and that "the coercive intervention of the Court is required because [Mother] has not remained sober and drug free on her own despite prior substance abuse services provided within the past 6 months and prior and ongoing involvement by DCS and the Court." *Id.* at 94. This appeal ensued.

## Discussion and Decision

Mother appeals the juvenile court's adjudication of Child as a CHINS. As we have explained:

Indiana Code Section 31-34-1-1 provides that a child is a child in need of services if, before the child becomes eighteen years of age: (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical

care, education, or supervision; and (2) the child needs care, treatment, or rehabilitation that: (A) the child is not receiving; and (B) is unlikely to be provided or accepted without the coercive intervention of the court. "A CHINS adjudication focuses on the condition of the child." *N.L. v. Ind. Dep't of Child Servs. (In re N.E.)*, 919 N.E.2d 102, 105 (Ind. 2010). "[A] CHINS adjudication does not establish culpability on the part of a particular parent." *Id.* "Said differently, the purpose of a CHINS adjudication is to protect children, not punish parents." *Id.* at 106.

The DCS has the burden of proving by a preponderance of the evidence that a child is a CHINS. I.C. § 31-34-12-3; *Davis v. Marion Cnty. Dep't of Child Servs. (In re M.W.)*, 869 N.E.2d 1267, 1270 (Ind. Ct. App. 2007). When reviewing the sufficiency of the evidence to support a CHINS adjudication, we consider only the evidence favorable to the judgment and the reasonable inferences raised by that evidence. *In re M.W.*, 869 N.E.2d at 1270. This court will not reweigh evidence or judge witnesses' credibility. *Id.* A CHINS adjudication "may not be based solely on conditions that no longer exist," but the court should "consider the [family's] situation at the time the case is heard by the court." *S.S. v. Ind. Dep't of Child Servs. (In re R.S.)*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013).

Moreover, the trial court entered findings of fact and conclusions thereon pursuant to Indiana Trial Rule 52(A). We may not set aside the findings or judgment unless they are clearly erroneous. Ind. Trial Rule 52(A); *Menard, Inc. v. Dage-MTI, Inc.*, 726 N.E.2d 1206, 1210 (Ind. 2000). In our review, we first consider whether the evidence supports the factual findings. *Menard*, 726 N.E.2d at 1210. Second, we consider whether the findings support the judgment. *Id.* "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). A judgment is clearly erroneous if it relies on an incorrect legal

standard. *Menard*, 726 N.E.2d at 1210. We give due regard to the trial court's ability to assess the credibility of witnesses. T.R. 52(A). While we defer substantially to findings of fact, we do not do so to conclusions of law. *Menard*, 726 N.E.2d at 1210. We do not reweigh the evidence; rather we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999).

*E.B. v. Ind. Dep't of Child Servs. (In re Des. B.)*, 2 N.E.3d 828, 835-36 (Ind. Ct. App. 2014).

[4] According to Mother, the DCS failed to demonstrate that her drug use was a serious endangerment to Child:

in this case the only allegation was that the parent needed substance abuse counseling or treatment. There was evidence that drug paraphernalia was found in the room of a tenant renting a room in [Mother's] house and, since the CHINS was filed, [Mother] has one positive test for drugs. However[,] the evidence also showed that [Mother] is in drug treatment and her drug tests will be supplied to the DCS. There was no evidence that drugs have ever been used in the presence of her son by [Mother], or anyone, or that drug use endangered her son. To the extent that [Mother] has a problem she is already in a drug treatment program.

. . . The DCS and the juvenile court did not even attempt to specify any specific threat or danger to [Child]. The DCS did not introduce any evidence to show that [Mother] has not always provided for her son's needs . . . . The DCS did not call any expert witnesses who offered testimony that drug use by a parent is a *per se* threat to a child. Drug use in the presence of the children, or to an extent that it prevents a parent from providing

for the child's needs, would be a concern, but no evidence of that
was present in [Mother's] case.

Appellant's Br. at 10-11.

[5] We cannot agree with Mother's assessment of the record. Mother disregards
the following evidence favorable to the juvenile court's judgment:

- Mother falsely reported to MCSD that Mr. S. was not present in the
  home when they attempted to serve the warrant on him;
- While Mother informed MCSD that she was renting a room to Mr. S.,
  Child's subsequent comments that he loved Mr. S. and that he did not
  want Mr. S. to be removed from the home, as well as Mother's attempt
  to hide Mr. S. from MCSD, demonstrate a more substantial relationship;
- Upon entering the home, MCSD officers observed Child coming from an
  upstairs bedroom, and they then located Mr. S., drugs, and drug
  paraphernalia in an upstairs bedroom.
- Mother failed one drug screen and refused to take a second;
- Mother has a history of substance abuse and Child had previously been
  adjudicated a CHINS because of her prior substance abuse.

[6] We agree with DCS that the evidence most favorable to the trial court's
judgment supports its conclusion that Mother's behavior seriously endangered
Child. The record demonstrates that Child had access to drugs and/or drug
paraphernalia. The record further demonstrates that Mother has an extensive
history and an ongoing problem with substance abuse. Her use of illicit
substances is not, as Mother suggests, a one-time occurrence. Indeed, Child has
previously been adjudicated a CHINS based on Mother's substance abuse, yet
at the time of the instant adjudication Mother continued to fail drug tests. In
light of the evidence most favorable to the juvenile court's judgment, we cannot

say that the court's adjudication of Child as a CHINS is clearly erroneous. Accordingly, we affirm the juvenile court's judgment.

[7] Affirmed.

Bailey, J., and May, J., concur.