## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 09 2018, 6:49 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Amy Karozos
Greenwood, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Kyle Hunter
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In Re the Matter of:  M.G., Child in Need of Services | May 9, 2018 |
| K.H. (Mother) | Court of Appeals Case No. 49A04-1711-JC-2657 |
| *Appellant-Respondent,* | Appeal from the Marion Superior Court, Juvenile Division |
| v. | The Honorable Marilyn Moores, Judge |
| Indiana Department of Child Services | The Honorable Danielle Gaughan, Magistrate |
| and | Trial Court Cause No. 49D09-1705-JC-1736 |
| Child Advocates, Inc., | |
| *Appellees-Petitioners* | |

**Altice, Judge.**

## Case Summary

[1] M.G. (Child) was adjudicated a Child in Need of Services (CHINS) by the Marion Superior Court. K.H. (Mother) appeals, arguing that the Department of Child Services (DCS) did not present sufficient evidence to support the trial court's CHINS determination.

[2] We affirm.

## Facts & Procedural History[1]

[3] Child was born on August 26, 2016, to Mother and J.G. (Father). Father also has two children with A.L.: Le.G., born December 29, 2014, and Lu.G., born February 17, 2016. Mother, Father, A.L., and the three young children were living together in an apartment.

[4] Alicia Fry, a permanency case manager with DCS, became involved with Mother in December 2016. At the time, the case was classified as an informal adjustment due to the fact that Child tested positive for THC through his umbilical cord and Mother admitted to using marijuana during her pregnancy. As part of an assessment, Mother revealed that she was not getting mental health treatment although she claimed she had been diagnosed with bi-polar disorder, ADHD, split personality tendencies, and depression. Mother admitted that Child is afraid of her. She also informed Fry that she would put

---

[1] Father does not appeal the CHINS determination. We therefore set forth the facts as pertinent to Mother.

food on the carpet to keep Child busy while she and Father were "back in the room having alone time," and that she would give Tylenol to Child to calm him down. *Transcript* at 66.

[5] Fry visited Mother's apartment and noted an abundance of clutter, a mattress on the floor, old food on the carpet, and "things you wouldn't normally find inside the apartment like a tire sitting against the wall." *Id*. at 67. Fry was aware that Mother and Father fought regularly and to such an extent that they had been threatened with eviction. Fry believed Mother needed services to ensure the safety and well-being of Child. She recommended homebased therapy, homebased case work, domestic violence training, mental health and substance abuse assessments, and that Mother follow all recommendations of those assessments.

[6] On May 25, 2017, Mother and Father got into a verbal argument, which turned physical when Mother hit Father "several times." *Id*. at 29. Father retrieved a handgun, pointed it at Mother, and threatened to shoot her. Father then pointed the gun at himself and threatened to commit suicide. A.L. and all three children were present and witnessed the incident.

[7] IMPD Officer Theodore Cragen was dispatched to the apartment. Officer Cragen interviewed Mother and she told him what had happened. Mother also admitted to having mental health problems and admitted to considering suicide every day. Officer Cragen had the opportunity to see the inside of the apartment, which he described as cluttered. He saw on an end table, in plain

view, a pipe used for smoking narcotics. He also confiscated a part of the firearm Father had pointed at Mother,[2] a BB gun, and two swords. Ultimately, Officer Cragen arrested Mother for battery and domestic battery, Father for pointing a firearm, battery, and domestic battery, and A.L. on an active arrest warrant for battery.

[8] Given the situation, the Marion County DCS was contacted. Kwanza Johnson, a family case manager (FCM) with DCS arrived at the scene. FCM Johnson spoke with Father who was in the back seat of a police vehicle. Father told her about the fight and explained that he was "stressed out and tired of it," so he went to the bedroom and retrieved the gun. *Id.* at 48. FCM Johnson also spoke with Mother before she was transported to jail and Mother told her that she "was tired of dealing with DCS." *Id.* at 49. FCM Johnson then went to the second-floor apartment. As she approached, she noted a distinct marijuana smell coming down the stairwell. Inside the apartment, she observed a mattress up against the wall as well as a pack and play and various baby items. There was a wet spot on the floor and Child was soaked from his shoulders to his feet perhaps from something that had spilled. FCM Johnson took Child and placed him in kinship care.[3]

---

[2] After the incident with Mother, but before police arrived, Father dismantled the firearm and his mother took parts of it to her house.

[3] FCM Johnson also took A.L.'s two children into DCS care. A.L. later admitted that her two children were CHINS and that coercive intervention of the court was necessary to obtain and maintain a safe and appropriate home.

[9]     On May 29, 2017, DCS filed a CHINS petition. A fact-finding hearing was held on August 29 and September 26, 2017. Thereafter, the court entered an order finding Child was a CHINS. A dispositional hearing was held on October 24, 2017, and the court entered a parental participation order the same day. Mother now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[10]    CHINS proceedings are civil actions, and therefore, "the State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). On review, we neither reweigh the evidence nor judge the credibility of the witnesses. *Id.* We consider only the evidence that supports the juvenile court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the juvenile court was clearly erroneous. *Id.*

[11]    Where the trial court issues findings of fact and conclusions thereon, we apply a two-tiered standard of review. *In re R.P.*, 949 N.E.2d 395, 400 (Ind. Ct. App. 2011). We consider first whether the evidence supports the findings and then whether the findings support the judgment. *Id.* We will set aside the trial court's findings and conclusions only if they are clearly erroneous and a review of the record leaves us firmly convinced that a mistake has been made. *Id.* "Findings are clearly erroneous only when the record contains no evidence to support them either directly or by inference." *K.B. v. Ind. Dep't of Child Servs.*, 24

N.E.3d 997, 1001-02 (Ind. Ct. App. 2015) (citation omitted). "A judgment is clearly erroneous if it relies on an incorrect legal standard." *Id*. at 1002.

[12] To meet its burden of establishing CHINS status, DCS must prove that the child is under eighteen years of age,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1. Although the acts or omissions of one or both parents can cause a condition that creates the need for court intervention, the CHINS designation focuses on the condition of the child rather than on an act or omission of the parents. *In re N.E.*, 919 N.E.2d at 105. "[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *N.L. v. Ind. Dep't of Child Servs.*, 919 N.E.2d 102, 106 (Ind. 2010).

[13] Mother first argues that DCS did not prove that domestic violence is an ongoing issue that poses a risk to Child. Mother's argument in this regard is based solely on the fact that the criminal charges filed against her had been

dismissed prior to the CHINS fact-finding hearing. She asserts that the CHINS adjudication "may not be based solely on conditions that no longer exist." *Appellant's Brief* at 13 (citing *In re R.S.*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013)).

[14] Contrary to Mother's argument, the dismissal of criminal charges does not in and of itself alleviate the concern for Child's well-being. DCS presented evidence that domestic violence in the home was ongoing and that it was to such an extent that Mother and Father were threatened with eviction. Although the charges against Mother were dropped, such does not change the fact that Mother and Father fight on a regular basis. With regard to the most recent altercation, Mother and Father fought in front of Child and the other minor children. Mother instigated the physical altercation by hitting Father several times. The fight escalated to the point where Father retrieved a handgun and threatened to shoot Mother before pointing the gun at himself and threatening to shoot himself. DCS established by a preponderance of the evidence that domestic violence issues within the home pose a risk to Child's well-being.

[15] Mother also argues that DCS failed to prove that her mental health posed an ongoing risk to Child. Mother asserts that her mental health was not a basis for the CHINS petition and that even if it was, DCS presented no evidence as to her mental health except for her own statements that she had been diagnosed with bi-polar disorder, ADHD, split personality tendencies, and depression.

[16]     While the domestic violence incident renewed DCS's involvement with Mother, DCS alleged that Child was a CHINS in part because Mother failed to provide Child with a safe, stable, and appropriate living environment by receiving proper mental health care. As Mother herself observes, she made statements to DCS indicating that she had previously been diagnosed with mental health issues. When an officer responded to this most-recent domestic violence incident, Mother told the officer that she contemplates suicide every day. This evidence is sufficient to support the finding that Mother's mental health posed an ongoing risk to Child.

[17]     Finally, Mother argues that DCS did not establish that coercive intervention of the court was needed. Mother asserts that the fact that she did not participate in services prior to the CHINS determination cannot be the basis for the CHINS determination because DCS failed to establish that such services were needed for Child's well-being.

[18]     DCS recommended that Mother engage in homebased therapy, homebased case work, domestic violence training, mental health and substance abuse assessments, and that Mother follow all recommendations of those assessments. DCS related each of the requested services to the facts of the situation before it. Specifically, domestic violence training was needed to address the ongoing domestic violence between Mother and Father, and especially the most recent escalation thereof. Mother's own statements to DCS as to her mental health diagnoses as well as her statement to police that she contemplates suicide every day supports the request for a mental health assessment. Mother's behaviors,

including giving Child Tylenol to calm him down or leaving food on the floor to keep Child occupied, demonstrate the need for homebased therapy and homebased case work. Prior to the CHINS determination, Mother refused to participate in such services because she felt they were unnecessary. DCS has established the need for the services and that coercive intervention of the court was necessary to secure Mother's compliance with the requested services.

[19] In sum, our review of the record leads us to conclude that the evidence sufficiently supports the court's findings, and those findings support the court's CHINS determination.

Judgment affirmed.

Najam, J. and Robb, J., concur.