# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jun 18 2018, 8:38 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Benjamin J. Church
Church Law Office
Monticello, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

## IN THE
# COURT OF APPEALS OF INDIANA

In Re the Matter of:
Mad.R. and Mas.R.
*(Children in Need of Services)*,

and

D.C. *(Custodian)*,

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,

*Appellee-Petitioner.*

June 18, 2018

Court of Appeals Case No.
91A04-1711-JC-2809

Appeal from the White Circuit
Court

The Honorable Robert Thacker,
Judge

Trial Court Cause No.
91C01-1705-JC-21
91C01-1705-JC-22

**Robb, Judge.**

# Case Summary and Issue

[1] D.C. appeals the juvenile court's adjudication of Mad.R. and Ma.R. ("Children") as children in need of services ("CHINS"). D.C. raises two issues for our review, which we consolidate and restate as a single issue: whether the juvenile court's CHINS determination is clearly erroneous. Concluding the juvenile court's CHINS determination is not clearly erroneous, we affirm.

# Facts and Procedural History

[2] Mad.R. and Ma.R. are twins born to N.R. ("Mother") in November of 2015.[1] Approximately six months after their birth, Mother placed her Children with D.C. and her husband, C.C. D.C. and C.C. are neighbors with the Children's maternal grandmother.[2] Although no guardianship was ever established, the Children have been raised and cared for by D.C. and her husband for a majority of their life.

[3] In March of 2017, C.C. was arrested for possession of marijuana, possession of methamphetamine, and burglary. Shortly thereafter, the Indiana Department of Child Services ("DCS") received allegations of excessive consumption of alcohol by D.C., drug use in the home, and unsanitary home conditions. DCS

---

[1] The Children's father is unknown.

[2] D.C. and C.C.'s minor biological son, L.C., also lives in their home. The Indiana Department of Child Services also filed a petition alleging him to be a CHINS; however, the juvenile court determined he was not a CHINS.

opened an investigation and met with D.C. and C.C. At the meeting on March 10, 2017, D.C. admitted to using marijuana and she and her husband submitted to drug screens. D.C. tested positive for marijuana and C.C. tested positive for marijuana and methamphetamine. Their positive drug screens resulted in the DCS drug screening the Children. Ma.R. tested positive for methamphetamine and Mad.R. tested positive for methamphetamine and marijuana.

[4] After receiving the results of their drug screens, D.C. did not permit C.C. to live with her and the Children and moved into a different home. Additionally, DCS created a safety plan in which maternal grandmother was to move in with D.C. to help care for Children. On April 28, 2017, maternal grandmother informed the DCS that due to her poor health, she was unable to help care for the Children. That same day, the DCS again drug tested the Children. Mad.R.'s drug screen showed a decreased exposure to methamphetamine and marijuana; however, Ma.R.'s showed an increase in exposure to methamphetamine and a positive test result for marijuana. The DCS then removed the Children from D.C.'s care and placed them in foster care.

[5] On May 2, 2017, the DCS filed a verified petition alleging the Children to be CHINS. The juvenile court held a fact-finding hearing on the DCS' petition on June 19, 2017. At the conclusion of the hearing, the juvenile court stated "I believe that the [Children] are Children in Need of Services, and I don't think [D.C.] is an appropriate custodian for those children . . . ." Transcript, Volume 2 at 143. Two days later, the juvenile court issued its order on the fact-finding, adjudicating the Children as CHINS. The order provides, in relevant part,

In support for this conclusion of law, the following findings of fact are found:

* * *

3.     [Mother] placed the child, as well as the child's twin, with [C.C.] and [D.C.] soon after they were born, and the child has lived with them since that time. A guardianship was never established for the child.

4.     In March 2017, DCS received reports of suspected child neglect involving the children alleging that [C.C.], custodian, was arrested for drug possession, possession of paraphernalia, and burglary, that [D.C.], custodian, was consuming large amounts of alcohol and driving with the children while under the influence of alcohol, and that drugs were being used in the home.

5.     After DCS received the initial report in March 2017, [D.C.] tested positive for marijuana, [C.C.] tested positive for marijuana and methamphetamine, the child tested positive for methamphetamine and marijuana, and [C.C.] was re-arrested and is currently in jail on several pending criminal charges, including charges for theft relating to taking proceeds from the sale of cattle not belonging to him in amounts exceeding $14,000.00 and possession of methamphetamine.

6.     [D.C.] has a long history of alcohol and marijuana use and has consumed alcohol and used marijuana while supervising the child. A few years ago, she left a job she had been at for several years and has not had stable employment since that time; a previous employer testified that she sometimes smelled alcohol on [D.C.'s] breath while [D.C.] was at work. [D.C.] currently works part time at a liquor store.

7.     [Mother] is unable to provide the child with its basic needs, care, and supervision and has a history of instability and methamphetamine use.

8.  The child has been exposed to the effects of illegal drug use.

9.  [D.C.'s] alcohol and illegal drug use and [C.C.'s] illegal drug use, criminal matters, and incarceration interfere with their ability to provide the child with its basic needs, care, and supervision.

10. [C.C.] and [D.C.] have demonstrated irrational thinking and lack of insight to such an extent that their household is not functioning at a level high enough to provide a safe environment for the child.

11. The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the parents and custodians to supply the child with necessary supervision.

12. The child needs care, treatment, or rehabilitation that it isn't receiving and is unlikely to be provided or accepted without the Court's coercive intervention.

Appendix of Appellant, Volume 2 at 30-31.[3]  D.C. now appeals.  Additional facts will be added as necessary.

# Discussion and Decision

---

[3] The juvenile court's order provided in the appendix only references Mad.R. and not Ma.R.  *See* App. of Appellant at 30-31.  If there is a separate order adjudicating Ma.R. a CHINS, it has not been provided in the appendix.  Nonetheless, the transcript clearly demonstrates the juvenile court found both Mad.R. and Ma.R. to be CHINS.  The juvenile court concluded the fact-finding hearing stating, "Judgment of Child in Need of Services on both of the [Children], and denying the petition on [L.C.]."  Tr., Vol. 2 at 145.

# I.  Standard of Review

This court engages in a two-tiered standard of review when reviewing a juvenile court's findings of fact and conclusions of law in a CHINS case. *Matter of K.S.*, 78 N.E.3d 740, 744 (Ind. Ct. App. 2017).

> First, we determine whether the evidence supports the findings, and then, we determine whether the findings support the judgment.  Findings are clearly erroneous when there are no facts or inferences to be drawn therefrom that support them.  A judgment is clearly erroneous if the findings do not support the juvenile court's conclusions or the conclusions do not support the resulting judgment.

*Id.* (internal citations omitted).  Moreover, when reviewing a juvenile court's findings of fact, we do not reweigh evidence or judge the credibility of witnesses. *In re D.F.*, 83 N.E.3d 789, 796 (Ind. Ct. App. 2017).  Instead, we consider only the evidence supporting the judgment and the reasonable inferences drawn from that evidence. *Id.*

# II.  CHINS Adjudication

D.C.'s argument is two-fold.  First, D.C. challenges the juvenile court's findings of fact.  D.C. contests four of the juvenile court's specific findings and argues they are unsupported by the evidence.  Second, D.C. alleges the findings of fact do not support the juvenile court's judgment.

## A.  The Juvenile Court's Findings of Fact

D.C. challenges findings number 9 through 12.  Those findings provide,

9.      [D.C.'s] alcohol and illegal drug use and [C.C.'s] illegal drug use, criminal matters, and incarceration interfere with their ability to provide the child with its basic needs, care, and supervision.

10.     [C.C.] and [D.C.] have demonstrated irrational thinking and lack of insight to such an extent that their household is not functioning at a level high enough to provide a safe environment for the child.

11.     The child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the parents and custodians to supply the child with necessary supervision.

12.     The child needs care, treatment, or rehabilitation that it isn't receiving and is unlikely to be provided or accepted without the Court's coercive intervention.

App. of Appellant, Vol. 2 at 31.[4]

[9]     In regard to finding number 9, D.C. argues there is no evidence that her "alcohol or marijuana use had any tangible, harmful effects on [the Children]." Brief of Appellant at 10. D.C. also points to the fact she passed several alcohol and marijuana drug screens prior to the fact-finding hearing.

[10]    The evidence presented at the fact-finding hearing provides ample support for finding number 9. By her own admission and confirmed by her drug screens,

---

[4] Numbers 11 and 12 are not findings of fact; they represent the juvenile court's judgment that Children are CHINS and we address the juvenile court's judgment below. Further, finding number 10, even if we were able to determine what constitutes "irrational thinking," is not relevant to our ultimate conclusion. App. of Appellant, Vol. 2 at 31. The facts pertinent to the removal of the Children from the home and their CHINS adjudication relate to D.C. and C.C.'s use of alcohol and illegal drugs and exposure of the Children to those drugs. Thus, we confine our review to finding number 9.

D.C. uses marijuana. Her husband, C.C., uses marijuana and methamphetamine and is facing criminal charges for his use of both substances. Moreover, there was concerning evidence about the amount of alcohol D.C. consumed. D.C. admitted to using alcohol while the Children were under her supervision and the Children's maternal grandmother testified she often saw D.C. drinking alcohol and on at least one occasion witnessed D.C. drive after drinking alcohol. A former employer of D.C. who is also her relative testified she has smelled alcohol on D.C.'s breath at work. And D.C.'s mother-in-law testified she "thinks she drinks too much" and "needs to cut back on drinking." Tr., Vol. 2 at 52. D.C.'s mother-in-law also stated she has witnessed D.C. drive after drinking alcohol with the Children in the vehicle.

[11]     Most importantly, the Children have been exposed to D.C. and C.C.'s drug abuse with both Children testing positive for marijuana and methamphetamine. The evidence presented at the hearing provides a link between D.C. and C.C.'s illegal drug use and harmful and potentially harmful effects upon the Children, such as drinking and driving with them in the vehicle, supervising them while consuming alcohol, and exposing them to the illegal drugs of marijuana and methamphetamine. *See In re J.L.*, 919 N.E.2d 561, 564 (Ind. Ct. App. 2009) (affirming a CHINS determination where the mother knowingly exposed her thirteen-month-old child to an environment of illegal drug use). Accordingly, the juvenile court's finding that D.C. and C.C.'s drug and alcohol use interfered with their ability to provide for the Children's basic needs is not clearly erroneous.

## B. The Juvenile Court's Judgment

[12] D.C. also alleges the juvenile court's findings do not support the judgment the Children are CHINS. Specifically, D.C. argues the Children were not endangered at the time of the fact-finding hearing because she remedied the concerns about her drug use; therefore, coercive intervention of the court was unnecessary.

[13] Pursuant to Indiana Code section 31-34-1-1, a child is a child in need of services if, before the child becomes eighteen years of age,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14] Thus, the statute requires the DCS to prove three basic elements: (1) the parent's actions or inactions have seriously endangered the children, (2) the children's needs are unmet, and (3) the children's needs are unlikely to be met without State intervention. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). Because a CHINS proceeding is a civil proceeding, the DCS must prove the children are CHINS by a preponderance of the evidence. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012).

[15] D.C.'s main argument with respect to the juvenile court's judgment is that coercive judicial intervention is unnecessary because she remedied the conditions by passing numerous alcohol and drug tests in the months prior to the fact-finding hearing. D.C. cites to *In re R.S.*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013), where we stated a "CHINS adjudication may not be based solely on conditions that no longer exist."

[16] While it may be that D.C. passed her drug and alcohol screens, we conclude the juvenile court's judgment is supported by the findings and State intervention is necessary to protect the Children. After the Children were born, their biological mother left them with D.C., who never established a guardianship or possessed legal custody of the Children. As far as the record demonstrates, Mother still possesses legal custody of the Children although she is unable or unwilling to care for them.[5] Moreover, Mother left the Children in an environment where they were exposed to alcohol abuse and illegal drugs and subsequently tested positive for those same drugs. The juvenile court's judgment, therefore, is not clearly erroneous.

---

[5] According to the DCS family case manager, Holly Bishop, Mother has expressed her desire that the Children not be returned to D.C. and C.C.'s care and custody. *See* Tr., Vol. 2 at 99.

# Conclusion

[17] The judgment of the juvenile court is not clearly erroneous. Accordingly, we affirm the Children's adjudication as CHINS.

[18] Affirmed.

Najam, J., and Altice, J., concur.