

FILED

Oct 17 2025, 8:45 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

In the Matter of M.L. (Minor Child),

*Child in Need of Services*

and

A.L. (Mother),

*Appellant-Respondent*

v.

Indiana Department of Child Services,

*Appellee-Petitioner*

and

Kids' Voice of Indiana,

*Appellee-Guardian Ad Litem*

October 17, 2025

Court of Appeals Case No.
25A-JC-399

Appeal from the Marion Superior Court

The Honorable Geoffrey A. Gaither, Judge

Trial Court Cause No.
49D09-2404-JC-3344

---

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

The Marion Superior Court adjudicated M.L. ("Child") a Child in Need of Services ("CHINS"). A.L. ("Mother") appeals the CHINS adjudication and argues:

> 1. That the trial court was required to dismiss the CHINS petition because the Department of Child Services ("DCS") failed to file the pre-dispositional report forty-eight hours before the dispositional hearing.

> 2. That DCS failed to prove that the Child will continue to be endangered without the coercive intervention of the court.

We affirm.

## Facts and Procedural History

[3] Mother, who has three older children, gave birth to Child in October 2021.[1] At birth, Child was diagnosed with hydrocephalus. Mother sought appropriate medical care for Child until he was almost one year old. Thereafter, Mother claimed that Child's doctors refused to schedule visits for Child, and Child did not see a physician from April 2022 to November or December 2023.

[4] In November or December 2023, Child began to suffer from seizures, and Mother took Child to the emergency room. In January 2024, Child was admitted to the hospital for approximately one week because he was severely underweight. He was hospitalized again for five days at the end of February, and the treating physician diagnosed Child with failure to thrive. During both hospital stays, Child gained weight.

[5] After Child's second hospital stay, Mother was told to take Child to the Riley Hospital Primary Care Center for weekly weight checks. Child lost weight again and Mother was told that Child needed to be admitted to the hospital for a third time. Two-year-old Child weighed approximately fifteen pounds. On March 27, DCS received a report that Mother had not admitted Child to the hospital. After DCS intervened, Mother later took Child to the hospital where treating doctors decided to place an NG tube because Child was silently aspirating. After the NG tube was placed, Child gained weight. The hospital

---

[1] Child's father does not participate in this appeal.

provided Mother with NG tube training. Child's doctor remained concerned that Child had gained weight in the hospital during his prior stays but lost the weight quickly after he was discharged.

[6] On April 6, DCS removed Child from Mother's care, and, three days later, DCS filed a petition alleging that Child was a CHINS under the neglect statute, Indiana Code section 31-34-1-1. Mother was initially resistant toward working with service providers and did not believe that Child needed medical care that she was not providing.

[7] After DCS filed the CHINS petition, physicians diagnosed Child with cerebral palsy and a tissue disorder of the eye. Child needed feedings every three hours and was on medication for seizures, muscle spasms, nausea, a Vitamin B6 deficiency, and pain.

[8] After her initial resistance, Mother began to participate in services and made improvements in her parenting and ability to assist with Child's care. Mother received services from a nursing case manager who educated her on how to address Child's special medical needs. The nursing case manager noted that Mother's ability to manage Child's special medical conditions had improved. But she also thought that Mother should complete a psychological assessment due to her aggressive behavior with service providers and that Mother should complete parenting classes. Mother's home-based case manager did not have any concerns about the safety of Mother's home. The Child consistently gained weight while he was placed in foster care.

[9]     The trial court held fact-finding hearings on November 15 and 20. At the November 15 hearing, the trial court granted Mother's request to have Child returned to her home but ordered continued weight checks.

[10]    The court adjudicated Child a CHINS and concluded that:

> Under I.C. 31-34-1-1[,] [Child's] physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent . . . to supply the child with necessary, food, clothing, shelter, medical care, education, or supervision and [Child] needs care, treatment or rehabilitation that he is not receiving and is unlikely to be provided or accepted without the coercive intervention of the court. Mother's inability to regularly and timely seek medical care for [Child] affected her ability to adequately provide appropriate medical care for [Child]. Additionally, after [Child's] multiple hospitalizations for malnourishment[,] [M]other failed to adequately address his medical needs while in her care.

Appellant's App. Vol. 2, p. 114. The court scheduled the dispositional hearing for December 20.

[11]    DCS failed to file its predispositional report forty-eight hours before the dispositional hearing, which is required by statute. For that reason, Mother filed a motion to dismiss the CHINS petition. DCS filed the report just prior to the start of the dispositional hearing. The trial court denied Mother's motion to dismiss and proceeded to issue its dispositional order.

[12]    Mother now appeals.

## Mother's Motion to Dismiss

[13] First, we address Mother's argument that the trial court erred when it denied her motion to dismiss because DCS failed to timely file its predispositional report. Indiana Code section 31-34-18-1 provides in relevant part that after a court determines that a child is a CHINS, the court

> shall order the department or a caseworker to prepare a predispositional report that contains a:
>
> (1) statement of the needs of the child for care, treatment, rehabilitation, or placement; and
>
> (2) recommendation for the care, treatment, rehabilitation, or placement of the child.

[14] DCS is statutorily required to make predispositional reports "available at least forty-eight (48) hours before the dispositional hearing, unless the juvenile court determines on the record that the reports contain information that should not be released to the child or the child's parent, guardian, or custodian." I.C. § 31-34-18-6. The trial court must then provide a copy of the report to

> (1) each attorney, guardian ad litem, or court appointed special advocate representing the child; and
>
> (2) each attorney representing the child's parent, guardian, or custodian.

*Id.*

DCS did not provide the predispositional report to the CHINS court until the morning of the dispositional hearing.[2] Mother argued that the court was required to dismiss the CHINS petition because DCS failed to timely file the report, which violated her due process rights. In her Appellant's Brief, Mother argues that "DCS's failure to timely file its Predispositional Report, and the trial court's decision to hold the dispositional hearing despite the DCS error, deprived Mother of due process because it created an unreasonable risk of error in a proceeding with a profound impact on Mother's fundamental interest to parent" Child. Appellant's Br. at 16.

"The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal quotations omitted). Due process turns on the balancing of three factors: "(1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). "In balancing the three-prong *Mathews* test, we first note that the private interest affected by the proceeding is substantial—a parent's interest in the care, custody, and control of her child." *Id*. The countervailing *Mathews* factor—the State's parens patriae interest in protecting the welfare of a child—is "also substantial." *Id*. Therefore,

---

[2] DCS's lack of timeliness is disturbing. Importantly, the trial court could not have continued the hearing as an appropriate remedy because the hearing was scheduled for the last day allowed by Indiana Code section 31-34-19-1.

we focus on "the third *Mathews* factor, the risk of error created by DCS's actions and the trial court's actions." *Id*. at 918.

[17] The purpose of a dispositional hearing is for the court "to determine [the] next steps in the child's placement, care, treatment, or rehabilitation and the nature and extent of the parent's . . . role in fulfilling those steps." *In re D.J.*, 68 N.E.3d 574, 578 (Ind. 2017) (citing I.C. § 31-34-19-1). And the predispositional report is "intended to assist the court in entering the dispositional order[.]" *Matter of W.H.*, 254 N.E.3d 549, 558 (Ind. Ct. App. 2025).

[18] Mother argues that she was unable to "strategize opposition" to the recommendations in the report. Appellant's Br. at 16. However, DCS's predispositional report did not recommend any services that Mother was not already participating in or had already completed, such as the recommendations for psychological and parenting assessments. DCS acknowledged that Mother had already completed those assessments during the dispositional hearing. Tr. Vol. 2, p. 119. In the report, DCS also recommended that Child remain placed in Mother's home. Essentially, and importantly, the predispositional report maintained the status quo, and Mother had the opportunity to, but did not, oppose any of the services DCS recommended.

[19] For these reasons, and under these unique facts and circumstances, we are not persuaded by Mother's argument that the untimely filing of the predispositional report violated her due process rights. Therefore, the trial court did not err when it denied her motion to dismiss.

## Sufficient Evidence Supports the CHINS Adjudication

[20] Indiana Code section 31-34-1-1 provides that a child is a CHINS before the child becomes eighteen years of age if

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision [and]
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[21] If the juvenile court finds that the evidence satisfies subsections (1) and (2)(A) of the CHINS statute, it must determine whether court intervention is necessary to safeguard the child, pursuant to subsection (2)(B). Noting the evidence demonstrating her improved understanding in caring for Child's medical needs as the CHINS proceedings progressed, Mother argues that DCS did not present sufficient evidence that the Child will continue to be endangered without the coercive intervention of the court.

[22] Our standard of review is well settled:

> "[T]he State must prove by a preponderance of the evidence that a child is a CHINS as defined by the juvenile code." *In re N.E.*,

919 N.E.2d 102, 105 (Ind. 2010). We neither reweigh the evidence nor judge the credibility of the witnesses. *Egly v. Blackford County Dep't of Pub. Welfare*, 592 N.E.2d 1232, 1235 (Ind. 1992). We consider only the evidence that supports the [juvenile] court's decision and reasonable inferences drawn therefrom. *Id.* We reverse only upon a showing that the decision of the [juvenile] court was clearly erroneous. *Id.*

*In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). A decision is clearly erroneous if the facts do not support the findings or if the juvenile court applied the wrong legal standard to properly-found facts. *In re D.J. v. Ind. Dep't of Child Servs.*, 68 N.E.3d 574, 577–78 (Ind. 2017).

[23] The focus of a CHINS determination is on the status of the child, not on an act or omission of the parent. *See, e.g., In re N.E.*, 919 N.E.2d at 105-06; *In re S.C.*, 96 N.E.3d 579, 585 (Ind. Ct. App. 2017). A child therefore cannot be a CHINS "based solely on conditions that no longer exist." *In re R.S.*, 987 N.E.2d 155, 159 (Ind. Ct. App. 2013). So, before entering a CHINS adjudication, our trial courts should consider the child's status at the time the case is heard and the finding is made. *See D.J.*, 68 N.E.3d at 580; *In re A.R.*, 121 N.E.3d 598, 603 (Ind. Ct. App. 2019). Doing so avoids punishing a parent for a lapse in judgment or a past mistake when that parent has already taken corrective action. *D.J.*, 68 N.E.3d at 581. These considerations are vital in this context, as "a CHINS adjudication may have long-lasting collateral consequences for the family." *In re S.D.*, 2 N.E.3d 1283, 1285 (Ind. 2014).

[24] DCS filed the CHINS petition because Child was severely malnourished and underweight. Mother also had not provided two-year-old Child with medical care for several months and only sought medical care after he started having seizures. In January and February 2024, Child was admitted to the hospital because he was severely underweight and diagnosed with failure to thrive. Child gained weight during his hospital admission but lost weight when returned to Mother's care. DCS removed Child from Mother's care and filed the CHINS petition after he was admitted to the hospital in March 2024 because he had lost weight again. Two-year-old Child weighed approximately fifteen pounds.

[25] During the first few months of the CHINS proceedings, Mother was not cooperative with service providers. But during the fact-finding hearing, service providers agreed that Mother's attitude had improved and that she had developed a better understanding of Child's medical conditions. Child was returned to Mother's care on the date of the fact-finding hearing. However, Child's physician and case manager were understandably concerned that Mother's management of Child's medical and nutritional needs needed to continue to be monitored.

[26] We agree with Mother that the evidence established that she was cooperative with DCS, participated in services, and developed a better understanding of Child's unique medical needs in the months leading up to the fact-finding hearing. However, the trial court was reasonably concerned about Mother's long-term ability to meet Child's medical and nutritional needs given her

historical inability to do so. We agree with DCS that evidence established that the coercive intervention of the court is necessary until Mother demonstrates her ability to provide appropriate care for Child's special medical needs over an extended period of time.

## Conclusion

For all of these reasons, we affirm the trial court's order adjudicating Child a CHINS.

Affirmed.

Vaidik, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Sarah Medlin
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana